## No. 1248.

### M. A. MONTIJO VS. F. J. MONTIJO.—MILLER, CANNON & CO., INTERVENORS.—HENRY YOUNG ET ALII, INTERVENORS.

The labourer has the first and paramount privilege upon the crops raised by his labour for payment of his wages and a concurrent privilege with others upon the agricultural implements and stock used in the cultivation of the crops, while the factor has a privilege upon the crops alone and inferior in rank to the labourer.

In a contest between the factor and the labourer, the latter cannot be compelled to discuss the movables before enforcing his privilege on the crops because his lien on the crops is superior to all others and he is entitled to be first paid out of the fund produced by them. His concurrent lien on the movables is only an additional security to which he need not resort until the primary fund has proved insufficient.

APPEAL from the Nineteenth District Court. Parrish of St. Mary. *Goode*, J.

*D. Caffrey* for Miller, Cannon & Co., Intervenors.

*G. B. Shepherd* and *Foster & Suthon* for Henry Young and others, Intervenors.

The opinion of the Court was delivered by

MANNING, J. M. A. Montijo of Cuba sued F. J. Montijo of St. Mary parish for rent of the Retreat plantation situated therein and provisionally seized the crops. Miller, Cannon & Co. of Galveston who furnished the supplies and made advances for the cultivation of the place intervened to enforce their privilege, and Henry Young and other labourers also intervened, claiming a privilege superior to all others. The contest is between the factors and the labourers and the lower judge decided for the latter.

The labourers have the first privilege on the crops. Rev. Civ. Code, art. 3217, addendum to paragraph 9. They have a concurrent privilege with the lessor on the agricultural implements and stock, etc., while the factor has a privilege on the crops alone.

The contention therefore is—inasmuch as the labourer has a privilege on the crops and movables and the factor's privilege rests on the

crops alone, the labourer should be compelled to exhaust the movables first before he trenches on the crops, and should not be permitted to absorb the whole of a fund upon which the factor has also a privilege to the latter's detriment when he might satisfy his claim or a part of it out of a fund upon which the factor has not a privilege.

There is no textual provision of our law to that effect, (and privileges are *stricti juris*), but it is claimed that equitable considerations of the highest character will be promoted by construing its provisions touching privileges on agricultural estates and their fruits in the particular manner now insisted on, and the principle.adopted by courts of equity is invoked, that where one party has a lien on two funds and another has a lien only upon one of them, equity will compel him who has the double lien to resort first to that fund upon which the other has no lien.

The manifest object of our law was to assure payment to the labourers to the prejudice of every one else. The sequence of the different provisions shews this, for immediately after declaring the privilege of the labourer to be concurrent with the lessor, the furnisher of supplies, etc. it adds that his privilege shall be superior to all of them—the result of an amendment prompted doubtless by an apprehension of injury to agricultural interests if the labourer were not specially protected. However inequitable it may be for the labourer to be given precedence over the lessor, without whose land no crop can be grown, and over the factor without whose money the labourer cannot be fed, the law adopted that policy, and it is stamped very unmistakably on the legislation that was had immediately after the system of free labour began to be used. The law means that the labourer shall be paid whoever may suffer, and to ensure his payment gives him the first and paramount lien on the crops and a concurrent lien on the movables. To force him to discuss the movables before resorting to the crops would be hindering instead of helping him to payment for his labour, for if the factor can thus compel him to exhaust the movables so may the lessor, and he will be driven by one and the other to fruitless pursuits of the movables, and he might justly complain that while the spirit and intention of the law was to subject the crops to his payment first and over all, construction had placed obstacles in his way that defeat the law's intention. We cannot adopt a construction that would entail that result. The fact is there is no room for construction. The priority of the labourer's privilege is a matter of positive law.

And so the lower court held.

Judgment affirmed.