## No. 10,900.

HOBGOOD & FOSTER, C. P. HOBGOOD SUBSTITUTED, VS. CHARLES SCHULER, THIRD POSSESSOR.

CONSOLIDATED WITH CHARLES SCHULER VS. GEORGE H. SUTHERLIN, RECORDER OF MORTGAGES.

1. A party who advances money to the mortgage creditor of his debtor, in the payment of interest accumulations on the mortgage debt, becomes legally subrogated, *pro tanto*, to the mortgage creditor's right.

2. A party who purchases property encumbered by mortgage and vendor's lien, and employs the price in the payment of the mortgage debt, becomes legally subrogated to the mortgage creditor's right also.

3. An unauthorized cancellation of a mortgage may be reinstated on proper proceedings, taken contradictorily with the recorder and other mortgage creditors.

APPEAL from the Tenth District Court, Parish of DeSoto. · *Hall, J.*

---

*C. M. Pegues* for Plaintiff and Appellant:

Mortgages and privileges are extinguished when the creditor acquires the thing subject to the mortgage and privilege. C. C. 3411, 3277; 4 An. 416; 15 An. 407; 19 An. 260; 25 An. 559, 560; 34 An. 1032.

Parties acquiring title to real estate are bound by the recitals to their act. 34 An. 962.

Where a purchaser of real estate as the consideration of his purchase obligates himself to take up and pay existing mortgages or privileges against the land purchased, and in pursuance of such agreement subsequently so takes up and pays such mortgages and privileges, he is considered as having paid with the money of this vendor, and is not subrogated to the rights of the creditor, the debts in such a case being absolutely extinguished. 34 An. 962.

Hobgood vs. Schuler.

*E. W. Sutherlin contra:*

Inscriptions of mortgages can only be erased by consent of the parties, or by decree of competent court. C. C. 3371, *et seq.;* 30 An. 1307.

Authority to cancel a mortgage given in error of fact, affecting the motive, is done without lawful cause and is without legal effect. C. C. 1820, *et seq.;* C. C. 1893, *et seq.;* 15 An. 268 (270).

Subrogation takes place of right (1) for the benefit of him who, being himself a creditor, pays another creditor whose claim is preferable to his, by reason of his privileges or mortgages, and (2) for the benefit of the purchaser of any immovable property who employs the price of his purchase in paying the creditors to whom this property was mortgaged. C. C. 2161, 1982; 25 An. 64; 9 An. 247; 39 An. 366; 31 An. 839; 14 An. 587; 30 An. 1307; 34 An. 962; 1 L. 373; 15 L. 385.

4. If the consideration, in a contract of sale, be declared therein to be cash, it is competent to show that there was some other real and sufficient consideration. C. C. 1900; 30 An. 969; 34 An. 688, 689.

---

The opinion of the court was delivered by

WATKINS, J.   Alleging Charles Schuler's possession as owner of a tract of 320 acres of land, which he had acquired from one James, his judgment debtor, since the registry of his judgment against it as a judicial mortgage, on the 28th of February, 1889, the plaintiff proceeds against said property by the hypothecary action, in the foreclosure and enforcement of same.

The defence set up is that in 1882 James bought of Mrs. J. V. McKellar a tract of 560 acres of land for the total price of $3356, of which $400 was paid in cash, and for the remainder he executed his several promissory notes, falling due, respectively, on January 1, of 1884, 1885, 1886 and 1887, with interest, the payment of which being secured by a duly recorded mortgage and vendor's lien upon the property.

That for certain advances made to James in cash, to make advance payments on this property, and money advanced to enable him to put improvements thereon, Schuler took a title to 240 acres of said land, on the 22d of January, 1885, though the consideration therefor is expressed in the act of sale as $1800 in cash—being insufficient in amount to satisfy the whole of James' indebtedness to him.

That on March 17, 1890, by deed *recorded same date,* he purchased of said James the remaining 320 acres of said original tract of land —the land which is the subject of this contestation—ostensibly for $3200 in cash, as recited in the deed, whilst in reality the consideration was the balance of the original purchase price that James was

due McKellar, "which was then estimated in principal and interest, *including sums previously advanced thereon by him*, to be about that amount, but which, in fact, amounted to the sum of $3232.56."

That he thereafter executed a special mortgage on the entire tract of 560 acres and other lands, to secure a loan of money one Thompson had made to him for the purpose of enabling him to pay off and discharge " the then last mentioned notes of James, given as part of the purchase price (of the land) to McKellar, as aforesaid; and that respondent (Schuler) thereby became legally subrogated to the said McKellar's rights of vendor's privilege and special mortgage on the said remaining 320 acres of land, to secure said last three notes executed by James to McKellar, and that he (Schuler) was thereby entitled to be paid the amount thereof, *and sums previously advanced to him thereon as aforesaid, out of said 320 acres of land, in preference to* plaintiff."     Brief of Schuler's counsel, pp. 3 and 4.

As applicable to the foregoing statement, counsel further represent that the McKellar mortgage was, without due authority, or his (Schuler's) consent, and also in error of fact, canceled and erased from the mortgage record, whereon it was, in due time and seasonably recorded, and, in proper proceedings against the recorder he seeks its re-establishment and maintenance, with preference on the proceeds of sale over the mortgage of the plaintiff—*quoad* the tract of 320 acres of land.

In the matter of the rule on the recorder the defendants urged a plea of no cause of action, which being overruled, there was a motion made to strike out Schuler's answer in the hypothecary action on somewhat similar grounds to those taken under the plea of no cause of action, and it was likewise overruled.

The answer in the rule proceeding is substantially that from the proceeds of Thompson's loan to Schuler, the James notes were paid, the McKellar mortgage canceled and the rights of mortgagee and mortgagor became united in Schuler as purchaser from James, and were extinguished by confusion; therefore, the cancellation was correctly made, and can not be revoked.

On Schuler's motion the two cases were consolidated, and on the trial judgment was rendered recognizing plaintiff's judicial mortgage and ordering sale of the 320 acres of land; but it further decreed that Schuler was legally subrogated to the rights of vendor's privilege and mortgage of McKellar " for the said three last notes of James

to her in controversy, to take rank as of date of recordation on November 3, 1882, and that Schuler be paid the amount of said three notes, in principle and interest, out of proceeds of sale of said 320 acres of land in preference to Hobgood's judicial mortgage." · Brief of Schuler's counsel, pp. 12 and 13.

No allowance is made for counsel fees as prayed for in the answer of Schuler.

From that judgment the plaintiff appealed, and in answer to the appeal Schuler requests an amendment in his favor awarding him the 5 per cent. stipulated in the McKellar mortgage as counsel fees— praying that it be in other respects affirmed.

On this presentation of the case there are two questions for determination: (1) Schuler's subrogation *vel non* to the McKellar mortgage, and (2) if subrogated, the extent of his subrogation. For it seems to be plain that if Schuler be subrogated to McKellar's right of mortgage the question of cancellation is of but little practical importance, as both the theory of the plaintiff's and that of the defendant's counsel clearly indicate that it was erroneously made— that of the former being that Thompson's agent, with undue haste, acted upon an uncompleted abstract of title which made no disclosure of the Hobgood mortgage, the knowledge of which would have prevented its acceptance; and that of the latter being, that while he was the applicant for a loan of money from Thompson, he had no knowledge of plaintiff's mortgage, or of the abstract on which Thompson's agent acted in making the loan, and not only had no knowledge of its cancellation, but that its cancellation was adverse to his interest as a creditor of James.

I.

There is but little dispute in regard to the evidence, and but little difference of opinion as to the law of subrogation.

It seems to be conceded that, whereas Schuler became a purchaser from James of the 320-acre tract of land affected by the plaintiff's judicial mortgage, and subsequent to the date of its registry, for a price stated to be cash; yet the real and true consideration thereof was the amount of the balance due McKellar on the last three purchase notes of James, capital and interest, and certain other sums previously advanced by Schuler to James, which, together, aggregated a little more than the amount named in the deed

as the purchase price. And it also seems to be conceded that the amount of the said three purchase notes were paid from the proceeds of the Thompson loan, and that upon the faith of that payment the McKellar mortgage was canceled and erased—no other incumbrance on the property mortgaged appearing to interfere with the loan; and there being no part of the sum loaned coming to Schuler, after the James notes were paid, and his own mortgage indebtedness upon *other* portions of his property discharged.

We may therefore accept it as a fact that Schuler purchased with the intention, and James sold with the understanding and expectation, that the sale would square their accounts; and, resting upon that fact, the principle of law is clear that "subrogation takes place of right * * * for the benefit of the purchaser of any immovable property who *employs the price of his purchase in paying the creditors to whom this property was mortgaged.*" R. C. C. 2161. *

Therefore, Schuler having employed the price he contracted to pay James in the satisfaction of the purchase notes he owed McKellar, became legally subrogated to the McKellar mortgage and vendor's lien on the property, and that lien and mortgage primed and ranked the judicial mortgage of the plaintiff.

## II.

Being legally subrogated to McKellar's right of mortgage and vendor's lien on the property plainly implies that Schuler is to take the place of McKellar, *quoad* that lien and mortgage; and McKellar's right was limited by the amount of his demand, as evidenced by James' purchase notes, and the stipulations of the act of sale.

By a fiction of law Schuler became legally subrogated to the creditor's rights and securities by employing the price he was to pay the debtor, in discharge of his debt; and he thus became entitled to withdraw from the proceeds of sale just the sum the creditor was entitled to receive and no more.

But Schuler lays claim to the additional sum of $923.38 he alleges he had advanced to James, from time to time, in cash, wherewith he paid interest accumulations to McKellar on the last three purchase notes, and whereby he is entitled to be paid from the proceeds of sale, because he was legally subrogated to the rights of McKellar under the provisions of the code, as he " being himself a creditor, (paid) another creditor whose claim (was) preferable to his own by reason of his privilege and mortgage." R. C. C. 2161. *

The position of Schuler is thus concisely stated in his counsel's brief at pages 18 and 19, viz.:

" Although the title to the 320 acres recites that the sale was made from James to Schuler for $3200 cash, in reality the consideration was that the sale was made to reimburse Schuler the $923.38 already paid, and Schuler was to employ the balance of his purchase price in liquidating the balance, $2308.48, then due on the notes; aggregating $3232.36 as afterwards calculated, and not $3200 as approximated at the time.

" Schuler paid to James nothing of the purchase price, and Ford paid to Schuler nothing of the loan. The whole object of the sale of the 320 acres from James to Schuler was to reimburse to Schuler the $923.38 already paid by Schuler on the notes, and to which extent he was then legally subrogated, and to liquidate the balance, $2308.48, due thereon. In truth, the sale was made from James to Schuler to enable Schuler to raise money by mortgage on the lands to Thompson, through Ford, agent, for these purposes. The whole loan obtained by Schuler from Ford was retained by Ford, and the whole of Schuler's purchase price from James was directly applied to these purposes in the hands of Ford, as contemplated and intended by all the parties, and Schuler thus employed the whole of ' the price of his purchase in paying the creditors to whom this property was mortgaged.' "

There appears to be no question as to the fact of said sum of $923.38 having been paid by Schuler to McKellar on the interest accruing annually on the last three purchase notes of James. Nor is there any question of the fact that Schuler paid the money to Mc-Kellar directly, and that he charged the amount thereof to James' account on his books. It is equally a matter beyond question that, at the respective dates of these transactions, James was indebted to Schuler upon three antecedent transactions not satisfied by the sale of the 240 acres of land first conveyed to him.

The contention of the hypothecary creditor substantially is that, by becoming owner of the mortgaged property and acquiring the debt, the latter became extinguished by confusion (R. C. C. 3411), the right of mortgage becoming merged into the higher right of ownership.

To our thinking that article does not apply to the present case; but, if the relations of the parties had been different, and Mrs.

McKellar, mortgagee, had acquired " the ownership of the thing mortgaged," we would have had a case for the extinguishment of the mortgage.

But as Schuler and McKellar were both creditors of the common debtor, James, McKellar having the superior right and mortgage on the debtor's property, the law gave to Schuler the double right to pay McKellar her demands and to purchase the property mortgaged from the debtor, and employ the price in satisfying McKellar's mortgage—and thereby, in either event, become legally subrogated to McKellar's higher right as well as security.

If there be any incompatibility between the provisions of the two articles of the code, it is our plain duty to so construe them as to harmonize their construction. But, to our minds, there is no incompatibility between them.

In our opinion, a clear case of legal subrogation is made out on the part of Schuler, both in respect to the capital and interest of the last three mortgage notes Mrs. McKellar held against James.

We do not think this a case for the allowance of attorney's fees, because it is not a suit against James, the mortgagor, but an hypothecary action against the property which Schuler purchased in alleged satisfaction of his demands, with the debtor's consent, wherein another creditor with mortgage is contesting his right.

The judgment pronounced by the judge *a quo* is correct, and it is therefore affirmed.