## No. 11,634.

### MRS. CLARA C. GODWIN VS. F. S. NEUSTADTL.

Where property having been ostensibly sold by public act the vendor subsequently seeks reconveyance to himself on the ground that the sale was simulated, and the act was resorted to, to place the property under cover from the possible consequences of an unjust lawsuit then pending, the vendee defeats the action through his answers to interrogatories on facts and articles propounded to him, in which he declared the reality of the sale; the latter can not, when the vendor sues him upon the notes, defeat the second action by pleading that the original transaction was against good morals, nor by invoking estoppel against the vendor, based upon the allegations in the first suit that the notes were without consideration, and the sale simulated. A party is not estopped by pleadings unsuccessfully urged.

Where interrogatories on facts and articles, propounded to a defendant in aid of the special issue involved in a particular suit, are broadened out beyond the strict necessities of that issue, the defendant can not avail himself of his answers thereto in another suit involving new issues.

Where no claims having been registered against a succession under Art. 3275 of the Civil Code, no separation of patrimony asked for, nor administration sought, the heirs have been placed in possession, the holder of an unliquidated claim against the succession can not have it judicially established contradictorily with a universal usufructuary, whose usufruct has been constituted by the last will of the deceased. He must proceed against the heirs. Such a usufructuary is not directly bound for the debts (Civil Code, 533) and the property has become the property of the heirs.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

The present suit is the sequence of one brought by the plaintiff against the same defendant, which terminated in a judgment of this court rendered in May, 1890, which will be found reported in 42 An. 737. In that suit the plaintiff sued to recover certain immovable property which had been conveyed to her by an authentic act of sale to the defendant, on the ground that said sale was a simulation, executed for the purpose of protecting the property from a seizure under a judgment which might be rendered against her in a suit then pending.

. Plaintiff in that suit attached to her petition interrogatories on facts and articles addressed to the defendant designed to probe his conscience as to the truth of the facts alleged. Defendant answered, setting up an entirely different state of facts from that propounded by plaintiff, denying the simulation of the transfer, and averring that it was a real transaction, intended to secure the *legitime* of defendant's wife as forced heir of her father, and with the understanding that he (defendant) was ultimately either to convey the property to his said wife or to sell it and devote the proceeds to her benefit.

Defendant filed several exceptions, among which was one of no cause of action. After trial the court rendered judgment maintaining this particular exception, and from this judgment plaintiff appealed. On appeal the judgment was affirmed for the reason that the answers given to the interrogatories were held destructive of the cause of action.

Plaintiff then instituted the present action, in which she alleges

that she is the holder and owner of two promissory notes, executed by the defendant, payable to his own order and by him endorsed in blank, dated January 2, 1888, each for the sum of one thousand dollars, payable in one and two years, and bearing interest at the rate of eight per cent. per annum. That said notes represent part of the purchase price of certain property described in an act annexed to her petition, which on the 2d of January, 1888, she sold to the defendant. That in said act to secure payment of these two notes in capital and interest, as well as attorneys' fees, fixed at five per cent. on any amount for which the property might be seized, or for which judgment might be rendered, the purchaser specially mortgaged (with vendor's privilege retained) the property purchased, the said attorneys' fees and costs to be collectible on the same process and at the same time as the principal claim.

An order of seizure and sale was granted plaintiff, and under the same the property was seized by the sheriff, but the sale was stayed by an injunction which issued upon the petition of the defendant.

In his petition for injunction defendant alleged that the notes on which the writ of seizure and sale issued were made and executed by him without consideration. That the want of consideration was specially shown by his answers to the interrogatories on facts and articles propounded to him in the first suit, particularly in his answer to the third interrogatory, said answer to that interrogatory being that the act of sale referred to was drawn up and the property placed in his name for the purpose of partially securing the rights or *legitime* of his wife as one of the forced heirs of her deceased father, David R. Godwin, the husband of the plaintiff, all of whose property had been received by her.

That it was distinctly understood at the date of the execution of the act of sale that the two notes given therein were not to be used or negotiated by the plaintiff, but were to be returned to him upon judgment being rendered in the suit of H. T. Foote vs. Mrs. Clara C. Godwin; that he was then to convey the property to his wife, clear and unincumbered, or sell it and turn the proceeds of sale over to her. That in the meantime the rent of the property was to be applied toward the payment of taxes, insurance and repairs, and to be collected by the plaintiff, Mrs. Godwin. That he had been expecting to have the notes returned to him, and to be placed in absolute possession of the property, all of which would fully appear by

reference to his answers on facts and articles, and plaintiff's petition in the former suit. That the allegations of plaintiff in her present suit are inconsistent with those contained in her petition in the other case. That if the allegations in the first suit are true, those in the second are necessarily false. That in the first suit she distinctly alleged that she was the owner of the property, which she had caused to be seized under executory process in the present suit, and she can not be permitted to claim judicially the ownership of the property, and also to be the holder and owner of the alleged mortgaged notes existing against the same, which she declared in the first suit to be of no value, and issued without consideration, while in the latter they are declared to be legal and valid obligations. That the positions assumed in the two suits are inconsistent with, contrary to and exclusive of each other, and that she is *estopped* by her own judicial acts from asserting that the mortgage notes are legal and valid. That the former case was appealed to the Supreme Court, and that tribunal held his answers to interrogatories to be conclusive against Mrs. Godwin. That such being the fact, and the suit of H. T. Foote vs. Mrs. Godwin having been determined adversely to Foote by final judgment, he was entitled to have the two notes returned to him as having been given without consideration, and in order that he have the inscription of the mortgage, apparently securing the same, erased.

The widow and heirs of one John Eaton intervened in the suit. They set up the existence of a contract between David R. Godwin and John Eaton, by which Godwin agreed to give Eaton, payable on the collection of the same, one-fourth of the net proceeds of one hundred and fifty hogsheads of the lot of sugar purchased by Godwin from W. G. Betterton, a claim for which was before the Claim Commission at Washington, D. C., on condition of Eaton giving him his assistance in getting the claim. They alleged that the claim was realized by Godwin, who collected from the Government, May 2, 1887, the net proceeds of the claim, eleven thousand three hundred and twenty dollars, of which two thousand eight hundred and thirty dollars were held in trust by Godwin for Eaton—that Eaton, *before* his death, and the heirs of Eaton and his widow in community, *after* his death, made demand of payment of Godwin for the same, who failed to inform them of the fact that the claim

had been realized, but on the contrary informed them that he had not succeeded in realizing upon it. That Godwin having died, his universal legatee and widow, Mrs. Clara C. Godwin, the plaintiff herein, accepted his succession purely and simply, and was put in possession thereof. That the widow on the 2d January, 1888, made a fraudulent and simulated sale to the defendant Neustadtl of the property in litigation herein; that the alleged payment of five hundred dollars cash therein recited was not true, that the two notes executed were not *bona fide*, but were executed by both parties for the purpose of covering up the property from the pursuit of creditors, both parties being aware of the fact that the vendor was insolvent, and that the only property out of which intervenor could be paid was the property in question. Intervenors asked for judgment against them for the sum of two thousand eight hundred and thirty dollars, with legal interest from May 2, 1887; that the act of sale of 2d January, 1888, be set aside and annulled, and that it be sold in due course to satisfy their judgment.

To the intervention, the plaintiff in injunction, Neustadtl, excepted.

1. That it disclosed no cause of action.

2. That the validity and reality of his title attacked had been finally recognized by, and declared by the Supreme Court, and intervenors were without right or authority to attack the same.

3. That intervenors' right of action, if any they had, was the revocatory action, and, as against the demand as such, the prescription of one year was pleaded.

The intervenors then filed a supplemental petition, alleging that the date of collection of the claim by Godwin was in 1878, and not in 1877. That since the date of the collection thereof, intervenors had applied to him yearly for several years for information, and that he invariably replied that he considered the claim lost; that, on the strength of his repeated assurances to that effect, and his fraudulent suppression of the fact that he had made the collection, they were induced to believe that they had lost all their rights in the premises, and ceased to make further inquiry, until recently (in the year 1890) information was received by them accidentally, through report of the suits before referred to. Defendant Neustadtl, under reservation of this exception, answered the intervention, pleading the general issue, and the

prescription of ten years in bar of their demand. The court rendered judgment in favor of the intervenors against plaintiff, Mrs. Godwin, and defendant, Neustadtl, decreeing that intervenors recover from Mrs. Clara C. Godwin two thousand eight hundred and thirty dollars, with legal interest from judicial demand; that the sale from Mrs. Godwin to Neustadtl be set aside and annulled as a fraudulent simulation, and that the property purporting to have been sold therein be seized and sold in due course to satisfy the judgment then rendered in favor of the intervenors against Mrs. Godwin. It further ordered that the provisional injunction be made perpetual, prohibiting the seizure and sale of the property under the executory process issued by virtue of the notes and mortgage and vendor's privilege declared on.

Plaintiff, Mrs. Clara Godwin, appealed from the judgment, and pleads in this court the prescription of ten years against intervenors' demand. Neustadtl did not appear, but "for answer to the appeal taken by Mrs. Godwin asks that the judgment rendered in favor of the intervenors should be amended and reversed in so far as it recognized the claim of intervenors and decreed the sale to him a fraudulent simulation, and that in so far as it perpetuates the injunction it be affirmed.

_Branch K. Miller_ for Plaintiff, Appellant:

A claim of ownership unsuccessfully made in a suit does not estop the plaintiff, in a subsequent suit, from setting up a claim upon the same property as mortgagee. Chaffe vs. Heyner, 31 An. 594.

All defences available against the real party to a suit are likewise available against the nominal party. 4 N. S. 155; 6 R. 17; 2 La. 264.

The husband can not give testimony for or against his wife, and if admitted without objection must be disregarded by the court. Answers to interrogatories on facts and articles given by the husband are testimony, and within the rule of exclusion. 32 An. 643-1174; 38 An. 106-195; 40 An. 273; 21 An. 652, 681, 682; 20 An. 422.

Verbal admissions of a deceased person are the weakest of all evidence. 12 An. 401; 36 An. 631; 10 An. 29; 8 An. 278; 35 An. 1007; 37 An. 97.

Parol evidence to prove interruption of prescription or to take an obligation ut of prescription by verbal statements of the deceased debtor, or to prove an interruption of prescription of an obligation evidenced by writing after prescription has run, is inadmissible. If introduced without objection such testimony must be disregarded. 34 An. 543, and authorities there cited.

In the prescription operating a release from debt good faith is not required. A fiduciary debt forms no exception to this rule. C. C. 3530, 3550; 3 An. 46, 183.

*Horace E. Upton* and *R. H. Lea* for F. S. Neustadtl, Defendant and Appellee:

Answers to interrogatories on facts and articles stand as a part of the pleadings, and can not be contradicted by anything but a counter-letter. If they are destructive of plaintiff's action, an exception of no cause of action will lie. Mrs. Godwin vs. Neustadtl, 42 An. 735.

The verity and reality of authentic sales can be assailed by the parties thereto only in two ways, viz.: First, by means of a counter-letter; second, by the answers of the other party to interrogatories on facts and articles. 11 La. 418; 9 R. 379; 12 R. 215; 10 An. 704; 27 An. 266; 36 An. 100; 38 An. 154; 6 N. S. 206; 4 La. 1, 169, 351; 3 R. 441; 6 R. 443; 8 R. 102; 11 R. 270; 3 An. 153; 4 An. 487; 42 An. 738.

The strongest character of estoppel is that of acknowledgments or declarations in judicial proceedings. Such averments are the highest evidence against the party making them, and can not be contradicted nor denied. Were the rule otherwise, the integrity of judicial proceedings could not be protected. 6 M. 280; 2 An. 269; 5 An. 18; 4 An. 416; 6 An. 719; 11 An. 710; 40 An. 189; 23 An. 765; 18 An. 141; 31 An. 564; 30 An. 1309; 32 An. 962, 979; 33 An. 1370.

*Martin Voorhies*, *C. S. Kellogg* and *Albert Voorhies* for the heirs of J. Eaton, Intervenors and Appellees:

The identity of the sugars in controversy is established.

*Bona fide* creditors can intervene in suit between vendor and vendee to have the whole transaction declared a simulation in fraud of their rights. Distinction between revocatory action and one *en déclaration de simulation.*

Appellant, having admitted in answer to interrogatories on facts and
articles that the sale she ostensibly passed to her son-in-law
was a pure simulation, is estopped from questioning the judg-
ment, which recognizes her as the owner of the property.

In contract of mandate the ten years of prescription begins to run,
not from the date of the contract, but from the time when suit
could have been brought.

Defendant and intervenors are co-appellees. As between them the
judgment must stand. Nor can his answer, asking amendment
of judgment be " received," even as regards plaintiff appellant,
because filed on the very day of argument, instead of three days
before. C. P. Art., 890; Converse vs. Steamer, 15 An. 433;
Barrett vs. Donovan, 17 An. 182.

Plaintiff did not except to petition of intervention. The only excep-
tion filed and tried was defendant's. There is no omission in
that respect in the transcript. If plaintiff desires, we tender
him our consent to probe this matter at any time without resort
to *certiorari*.

Plaintiff, instead of excepting, at once joined issue on the merits,
and readily answered our interrogatories on facts and articles.

Besides, the intervention was not filed in the executory proceedings;
but we intervened in the ordinary injunction suit brought by
defendant against plaintiff, who ratified this proceeding by
freely joining issue and answering interrogatories.

The question is not whether prescription was interrupted, as argued
by plaintiff, but whether it was suspended under the operation
of the equitable rule, *Contra non valentem agere non currit
præscriptio*. See Boyle vs. Mann, 4 An. 170; Reynolds vs. Bas-
ton, 11 An. 729, sustaining in such cases the suspension of pre-
scription. Harvey vs. Pflug, 37 An. 906; Rabel vs. Pourcian, 20
An. 132; Murphy vs. Gutierrez, 20 An. 407.

Plaintiff and defendant, upon their own showing, should be denied
the help of the court for relief, which they respectively ask.
*Ex turpi causa non oritur actio*.

Godwin contracted with Eaton personally. Godwin's heirs can not,
without fraud, retain this fund from Eaton's heirs on any pre-
text. C. C., Arts. 2950, 2959, 3005.

Mrs. Godwin is universal legatee by her husband's will, and also with the written assent of the heirs she was, by solemn judgment of court, confirmed as universal legatee, and, as universal legatee, formally put in possession of the estate.

Even as the universal usufructuary, creditors of her husband under the jurisprudence of C. C., Art. 585 (579), have an actual legal interest to intervene in order to protect the property of the estate against tortious alienation to the prejudice of their rights. See Succession Sinnott, 3 An. 176; Succession Fitzwilliams, 3 An. 489; Succession Bringier, 4 An. 389.

Argued and submitted March 16, 1895.

Opinion handed down April 8, 1895.

Rehearing refused May 20, 1895.

The opinion of the court was delivered by

NICHOLLS, C. J.   We may say at once that Neustadtl, not having himself appealed, is not authorized to ask an amendment of the judgment obtained by intervenors.

We think a determination of the issues presented to us will be disposed of by taking up first the situation between the plaintiff and defendant without reference to the intervention which has been filed.   As between those parties the issues are within narrow compass.   Without assigning any reason for its judgment to that effect the District Court perpetuated the injunction which Neustadtl had caused to issue, restraining his vendor from proceeding to enforce the notes representing the price of the sale to him, and the enforcement of the mortgage and vendor's privilege securing the same.   In our opinion the judgment is erroneous.

The contention by the defendant that the plaintiff, Mrs. Godwin, is estopped from enforcing the notes she holds, because in the former suit she declared the sale to be a simulation, designed to protect her property from the consequences of a judgment which might be rendered in a certain suit brought by one H. T. Foote against her for her husband's debts, and sought to have the act of sale set aside on that ground, because the answers he gave to certain interrogatories propounded to him in that suit conclusively bind her in the present

54

one, and because the placing of the property in his name, under the circumstances it was done, was contrary to good morals, and should cause the doors of the courts to be barred against her, are none of them tenable.

The issue in the first suit was simulation *vel non*. The plaintiff asserted the simulation of the act of 2d January, 1888; the defendant denied it, and on being subjected to examination on facts and articles, answered in a manner to cause the issue to be determined adversely to the claim for simulation.

The answers of the defendant in that suit to interrogatories on facts and articles fulfilled their purpose, and caused the act to be maintained as an act of sale.

The interrogatories propounded to him were all asked in support of the charge of simulation, and their effect must be limited to that particular issue.

What the actual relations of the parties were (upon the hypothesis of the sale being a reality) was immaterial for the purposes of that suit, and foreign to the subject matter being investigated, and anything and everything in the answers outside of what was strictly necessary, for the decision of the particular issue involved in it was, so far as any future advantage to Neustadtl in a future suit involving other issues was concerned, utterly worthless. It would be a convenient and easy method of settling rights of parties if the defendant in a case, when interrogated on facts and articles, were authorized to broaden out his answers not only to meet the exigencies of the case before the court, but to meet possible exigencies of cases to arise in the future. We give effect to his answers to the extent of establishing the fact that the sale to him was a *reality*, *not a simulation*—further than that he can not ask. If the sale being real and apparently absolute and unconditional, there existed really covered limitations, conditions and purposes not stated on the face of the act, and they are susceptible of proof, that proof has to be made here through original competent evidence.

The plaintiff in this suit is not estopped, because in the former suit she pleaded that the act of sale was simulated. She tendered that issue to the defendant, who met it by alleging and, through his own answers, proving its reality. The decision of the court closed the question of simulation favorably to defendant, but in doing so it carried with it the disadvantage to him of being subsequently forced to

meet the obligations which he assumed in the act, then declared to be real. If there be estoppel in this case it is he, not Mrs Godwin, who is estopped on the issues as *now presented*. Parties are not bound by allegations *unsuccessfully* pleaded. Eng. and Am. Ency. of Law, Vol. 7, p. 3, note 2; McQueen's Appeal, 104 Pa. St. 595; Appeal of Susquehanna Ins. Co., 105 Pa. St. 615.

The plaintiff in this suit was legally authorized to sue upon the notes and enforce the mortgage, and the situation of affairs is not such as to warrant the defendant invoking against her the doctrine of a want of morality in the bringing of the suit. The case falls directly under the principle announced in Greffin's Ex'r vs. Lopez, 5 Martin, 166, in which the executor was seeking from Lopez the reconveyance of property which had been transferred to Lopez by Greffin upon the ground that the act was a simulation, and the suit was met by the objection urged here. The Supreme Court said: "In the present case the plaintiff sought to avert the consequences of threatened or impending prosecutions, covered his property, and, *re integra*, died. We find no instance in which a plaintiff similarly situated was denied relief, except under the common law of England, which declares fraudulent conveyances binding on the parties.

"But neither the principle of the common law of England nor the disposition of the statute of Elizabeth are known to be laws of this State, and we are bound to disregard them." In the case at bar the sale was resorted to for the purpose, let it be admitted, of protecting the property of Mrs. Godwin against the special claim of one Foote, who had brought suit against her to make her and her property liable for the debts of her husband, as she believed unjustly. The suit in question resulted in establishing the fact of her non-liability, and she would have been entitled to a reconveyance had not Neustadtl's answer blocked the way. It is a mistake to suppose that she is in this suit seeking to enforce an immoral contract; on the contrary, it is the defendant who is seeking to enforce the contract or arrangement which he declares reprobated by good morals. If this property were to remain in defendant's ownership, the creditors of Godwin, if such there be, would be placed at great disadvantage and possibly cut off by prescription, while by enforcing the sale with the light thrown on this transaction by the lawsuits which have occurred, will place an easy remedy within their grasp. If

the object was immoral, it is much more likely to be frustrated through this suit than by letting matters stand as they are. Antoine vs. Smith, 40 An. 566.

There is no evidence in this suit of the existence of the state of facts which Neustadtl declares as being those under which the act of sale was passed. He depends upon his answers to the interrogatories propounded to him in the other case. They do not serve him here. There is a great improbability that such a state of facts existed. If Mrs. Godwin's intentions had been such as defendant declares, she would scarcely have sought to retain the hold on the property which was evidenced by the notes and mortgage which were given; besides this, the wife of Neustadtl is only one of four of the children, issue of Godwin's marriage with plaintiff, and it is not at all likely that she would have secured the *legitime* of one child, without reference to that of the others. We think the condition of Godwin's succession was such as to make it very doubtful whether the children had any *legitime* to be secured. Godwin in his will acknowledged an indebtedness to his wife of twenty thousand dollars. With his succession liable for the payment of that debt, the *legitime* of the heirs would be little if anything, and Mrs. Neustadtl has been shown to have received already quite a large amount from her father's succession.

We think the plaintiff entitled to have the injunction which issued set aside, and to have judgment in her favor, as asked for by her, in her petition.

We now come to the demand of the intervenors, which was sustained by the lower court. It was based upon a contract between the husband of the plaintiff and John Eaton, the husband of one of the intervenors, and father of the others, by which Godwin bound himself to pay Eaton a certain portion of a claim which he (Godwin) was then prosecuting before the claims commission at Washington, D. C., provided Eaton would give his assistance toward procuring the claim. Eaton died in 1877 or 1878. Godwin died in 1888, leaving a will, in which he bequeathed to h.s wife, Clara C. Godwin, in *usufruct during her life*, what would remain of his estate after the payment of his debts. The will was probated, and the widow and heirs placed in possession by judgment of court of the 25th day of January, 1887. No application was made by any one for a separation of patrimony, nor is there any evidence before us that either

the claim of the widow and heirs of Eaton, or any other claim, was registered, as required by Art. 3275, C. C. The succession as such, and the property, as succession property, has long since ceased to exist. The property in litigation in this suit stood in the name of the wife of Godwin, and was sold (or apparently sold), by her to Neustadtl as her property. She appears to have been separate in property from her husband, who, in his will, recognizes his indebtedness to her in the sum of twenty thousand dollars.

It is true that in Godwin's will this particular piece of property is placed by him among the assets of his estate, and referred to " as standing in the name of the wife," coupled with the declaration " it was to be deducted out of the twenty thousand dollars due her at what it was worth, or may bring at sale, or she can take it at my valuation, worth to-day five thousand seven hundred and fifty dollars." But the statement of the husband did not divest the wife of the ownership of the same, if, in point of fact, it belonged to her.

It is not *alleged in the petition of intervention that it either now or at any other time belonged to Godwin.* Intervenors deal with Mrs. Godwin as the universal legatee of her husband, and, as such, bound for all his debts. Godwin left a number of children, who are not only his legal but his forced heirs, and intervenors are in error in supposing her to be her husband's universal legatee and bound for his debts. Article 583 of the Civil Code declares: " The universal usufructuary, or usufructuary under a universal title, whose usufruct has been constituted by act of last will, is not directly bound for the debts of the testator; that is to say, the creditors of the succession have no action against him to force him to discharge the debts out of his own estate, saving their rights to cause to be seized the effects of the succession, and to proceed against the heir of the testator to obtain payment."

The heirs of the testator are not parties to this suit, and Mrs. Godwin is not the proper party against whom and contradictorily with whom this unliquidated claim has to be brought to judicial recognition. They are the real parties interested in the matter, assuming this property to have ever belonged to Godwin, or to still belong to a " succession." It certainly could not be seized or ordered to be seized until the debt for the satisfaction of which it is to be seized has been legally established contradictorily with the parties owing the debt and owning the property. We do not think the judgment

can stand. The view we take of the situation relieves us from examining the question whether the intervenors, holding an unliquidated claim, had the right to come in the case at all for the purpose of having it therein liquidated, and whether intervenors would be entitled to a judgment, if the proper parties were before the court, under the evidence.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the District Court, appealed from, be and the same is hereby annulled, avoided and reversed in its entirety, and that the petition of intervention and demand in intervention of Marie C. Landry, widow of John Eaton, of Marie I. Eaton, wife of H. T. Laroque, of M. C. Eaton, wife of G. I. Voorhies, and of Gabrielle Eaton, wife of F. E. Voorhies, be and the same is hereby dismissed, the rights of the intervenors to proceed and make available whatever rights they may have under the contract, declared on by them against the proper parties, in some other proceeding, being expressly reserved.

It is further ordered, adjudged and decreed that the injunction which issued in this case, upon the petition of the defendant, Frederick S. Neustadtl, be and the same is hereby set aside, with the right of the plaintiff herein, Clara C. Godwin, to sue for damages for the issuing of the same being expressly reserved.

It is further ordered, adjudged and decreed that the sheriff of the parish of Orleans be and he is hereby ordered to proceed to the advertisement and sale of the property by him ordered to be sold, under the order of the judge of Division "E" of the Civil District Court for the parish of Orleans, bearing date July 1, 1890, and rendered upon the petition of Clara Godwin, widow of David R. Godwin, in the suit entitled Mrs. Clara C. Godwin vs. F. S. Neustadtl, number thirty thousand five hundred and forty-eight of the docket of the Civil District Court for the parish of Orleans; intervenors to pay costs of their intervention in both courts, defendant, Neustadtl, to pay all other costs (including the costs in the injunction proceedings) in both courts.