(69 South. 195)

No. 21179.

BROOKLYN COOPERAGE CO. v. CORA PLANTING & MFG. CO.

OZARK COOPERAGE & LUMBER CO. v. SAME (J. WATTS KEARNEY & SONS et al., Interveners).

(May 24, 1915. On Application for Rehearing, June 28, 1915.)

*(Syllabus by the Court.)*

1. SALES ☞226—DELIVERY—CREDITORS.

A sale of a certain number of barrels of sugar on a plantation, without actual delivery, does not affect third persons, and the property is liable in hands of the vendor to seizure and attachment in behalf of his creditors. Civ. Code, arts. 1922, 1923.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 626–644; Dec. Dig. ☞226.]

2. SALES ☞226—EFFECT—LIENHOLDERS.

Sugar on a plantation, though sold and delivered thereon, but not removed therefrom, remains subject to privileges on the crops of the year.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 626–644; Dec. Dig. ☞226.]

3. SEQUESTRATION ☞18—DISMISSAL OF INTERVENTION—CONCLUSIVENESS.

Estoppel or res judicata cannot be predicated on a second intervention claiming a crop privilege on different grounds.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 38–41; Dec. Dig. ☞18.]

4. AGRICULTURE ☞11—PRIVILEGE ON CROPS—FURNISHING SUPPLIES.

The furnishing of necessary plantation supplies creates a privilege on the crops of the year.

[Ed. Note.—For other cases, see Agriculture, Dec. Dig. ☞11.]

5. AGRICULTURE ☞11—PRIVILEGE ON CROPS—MEALS FOR LABORERS.

Meals furnished to laborers under a contract with the owner of the plantation constitute necessary supplies, where such meals form a part of their wages.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. §§ 15–30; Dec. Dig. ☞11.]

6. SEQUESTRATION ☞15—EVIDENCE—DIFFERENT CLAIMS.

In a concursus, where a certain basis of distribution is common to a certain class of creditors, and the court has fixed such basis on evidence offered by some of them, the court may consider the same evidence in passing on the claims of other creditors of the same class.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 25–32; Dec. Dig. ☞15.]

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Joseph E. Le Blanc, Judge.

Separate suits by the Brooklyn Cooperage Company and Ozark Cooperage & Lumber Company against the Cora Planting & Manufacturing Company, in which J. Watts Kearney & Sons and others intervened, claiming certain liens against the property seized under writ of sequestration. Judgment for the plaintiffs and certain of the interveners, and plaintiffs and other interveners appeal. Affirmed in part and reversed and remanded in part, and on application for rehearing certain appellants ordered to pay the costs of appeal.

James E. Zunts, of New Orleans, for appellant Robert P. Hyams Coal Co., Limited. Hall, Monroe & Lemann, of New Orleans, for appellants Swift & Co., Limited, and J. Watts Kearney & Sons. Borron & Wilbert, of Plaquemine, for appellant Heyn. J. Howell Pugh, of Plaquemine, and H. G. McCall, of New Orleans, for appellant Brooklyn Cooperage Co. J. Howell Pugh, of Plaquemine, and F. Rivers Richardson, of New Orleans, for appellant Ozark Cooperage & Lumber Co. Albin Provosty, of New Roads, and J. A. Carville, of Plaquemine, for appellants J. Aron & Co. and Burkenroad-Goldsmith Co., Limited. Borron & Wilbert, of Plaquemine, for appellees Hampton and Earle. Guion, Lambremont & Hebert, of Lutcher, and John F. Wilmeth, of Plaquemine, for appellees Levy, Loeb & Co., Grabenheimer, and Powers. Charles Rosen and Lazarus, Michel & Lazarus, all of New Orleans, for receiver Loeb.

LAND, J. The Brooklyn Cooperage Company sued the defendant company for the sum of $1,785 for the price of 1,400 molasses barrels furnished for the purpose of putting on the market its crops of sugar and molasses for the season of 1913.

Plaintiff claimed a privilege as a furnisher of necessary plantation supplies under C. C. 3217, and also a vendor's privilege on barrels on hand, and sued out a writ of sequestration under which the sheriff seized 530 barrels of sugar, 44 barrels of molasses, 4 tanks of molasses, and 528 filled and empty molasses barrels.

The Ozark Cooperage & Lumber Company followed with a similar suit and seizure for a balance of $1,423 for certain cooperage stock and material furnished to the defendant company, claiming a privilege as furnisher of supplies on the crops of 1913, and also a vendor's privilege on whatever of said stock and material remained in the possession of the defendant. Under the writ of sequestration the sheriff seized, in addition to what had already been seized under the first writ, 485 empty sugar barrels.

Numerous interventions and oppositions were filed claiming privileges on the sugar and molasses under seizure.

J. Aron & Co. appeared, and under a claim of ownership bonded out 530 barrels of sugar under seizure, and a few days later intervened in the suit.

This intervener alleged a purchase of 600 barrels of sugar from the defendant company on December 16, 1913, "f. o. b. plantation," payment of the price, and a subsequent sale and removal of 75 barrels of the sugar.

Burkenroad-Goldsmith Company also intervened, claiming ownership of 200 barrels of the sugar by purchases from J. Aron & Co.

Holly Heyn intervened, first claiming a privilege on the crop as "sugar chemist and head overseer" in defendant's factory, and later as overseer of the plantation.

H. Grabenheimer intervened, and sued for a balance of $2,245.86, with privilege on the crops of 1913, for necessary plantation supplies furnished to the defendant company. Levy, Loeb & Co. also intervened, suing for $1,011.43, and claiming a like privilege on the crops. Z. T. Erle, Jr., and Wiley Hampton severally intervened, claiming privileges as the vendor of sugar cane, under Act No. 27 of 1894, on the sugar and molasses seized by the plaintiffs.

Mrs. B. Powers intervened, claiming a privilege on the sugar and molasses under seizure as the furnisher of meals and supplies for the use of laborers on the defendant's plantation.

A. A. Brown, as sheriff, agent, etc., intervened and claimed $177 for cane delivered to the defendant, with the statutory privilege on the sugar and molasses of the crop of 1913. The foregoing include all the interventions discussed in the brief of the two plaintiffs and appellants. Other interventions were filed, and some of them were allowed, but plaintiff's brief refers to none of them, except that of W. J. Blanchard, which was dismissed.

The judgment below rejected the claims of J. Aron & Co., Burkenroad-Goldsmith Company, Holly Heyn, and W. J. Blanchard, and allowed the respective claims of the two plaintiffs, and, in whole or part, the claims of H. Grabenheimer, Levy, Loeb & Co., A. A. Brown, sheriff and agent, Wiley Hampton, Mrs. B. Powers, and Z. T. Earle, Jr. Plaintiffs' and appellants' objections to the judgment below are confined to the six claims last mentioned.

[1] The first issue in logical order relates to the sale and delivery of the 600 barrels of sugar by the defendant company to J. Aron & Co. in December, 1913. This sale was made through J. C. Murphy & Sons, brokers, of the city of New Orleans. The invoices read "F. o. b. Plnt." The receipts for the price read: "Cora sugars f. o. b. plantation and now stored in Cora factory for account and at the risk of J. Aron & Co." In January, 1914, J. Aron & Co. sold and shipped out 75 barrels, and during the same month sold to the

Burkenroad-Goldsmith Company 200 barrels "f. o. b. cars" out of the 600 barrels of sugar purchased for the defendant company.

The same 200 barrels were seized in the sugar house on the Cora plantation.

The judge below held that the evidence did not show an actual delivery of the 525 barrels of sugar purchased by J. Aron & Co. from the defendant company. There was no change in the physical possession of the sugar, and, if there was any delivery, it was merely constructive. A sale of movables without actual delivery does not affect third persons, and the property is liable in the hands of the vendor to seizure and attachment in behalf of his creditors. C. C. 1922, 1923.

[2] Even conceding that the sugar was delivered on the plantation, but not removed therefrom, it was still subject to the privileges on the crops of the year. National Bank of Commerce v. Sullivan, 117 La. 163, 41 South. 480. All the justices concurred in the opinion in that case as far as applicable to the facts. In Loeb v. Collier, 131 La. 377, 59 South. 816, a farmer deposited a bale of cotton raised by him with a compress company, and subsequently sold the bale to a merchant, who in due course sold the bale to the plaintiff, a cotton buyer. Under this state of facts, the court held that the privilege of the furnisher of supplies on the bale of cotton had been lost. Loeb v. Collier affirms Bank of Commerce v. Sullivan, but holds that the doctrine of the latter does not apply where the product has been removed from the farm, and by sale and resale has entered the channels of trade and become merchandise. There is no provision of the Civil Code which declares that privileges on crops are extinguished by sales, but, as held in Loeb v. Collier, such privileges are lost when not asserted in time to prevent the products on which they rest from becoming articles of commerce. But no such state of facts is presented in the instant case, and therefore the 525 barrels of sugar on the plantation, even if sold, remained subject to the privileges on the crops of 1913.

[3] Holly Heyn filed an intervention claiming a balance of $2,670.63 for salary as sugar chemist and head overseer of the sugar factory of the defendant, and a privilege as laborer and overseer on the crops of the year 1913. This intervention was dismissed on an exception of no cause of action. Intervener acquiesced in this ruling, and was permitted to file another petition of intervention, claiming the same amount of defendant "as head overseer or manager of its Cora and Annandale plantations, * * * and its sugar refinery situated on said Cora plantation," with overseer's privilege on the crops of the year. The intervener alleged error and mistake in the allegation of his first petition that he was employed "as sugar chemist and head overseer in the factory of the defendant."

To this petition plaintiffs excepted that it was nothing but an amendment to the original petition, and came too late after the judgment sustaining the exception of no cause of action. Plaintiffs' exception was overruled, and the intervention was put at issue. On the trial of the case plaintiffs objected to all evidence in support of the allegations of the second intervention of Holly Heyn, on the ground that the intervener had made a judicial admission that he was employed by the defendant as a chemist and sugar house overseer, and that the evidence offered under the allegations of the second intervention will go to contradict his judicial admission in his first petition by undertaking to show that he was employed in another capacity. This objection was sustained by the court, and the evidence ruled out. Evidence offered to show the alleged error in the drafting the first petition of intervention was also ruled out.

We think that the intervener had the right to·show error or mistake by his attorney in the drafting of his original petition of intervention. See Coleman v. Jones & Pickett, 131 La. 803, 60 South. 243, and authorities therein cited. Moreover, there is no repugnancy between the allegations of the petition, as the intervener might well have been employed as sugar chemist and head overseer in the factory, and also as head overseer of the two plantations. Besides, parties are not bound by allegations unsuccessfully pleaded. See Godwin v. Neustadtl, 47 La. Ann. 851, 17 South. 471.

Plaintiffs have filed in this court a plea of res judicata, which is necessarily based on the predicate that the causes of action in the two interventions are the same. In the court below the plaintiffs contended that the allegations of the second petition were inconsistent with those of the first petition, and shifted the issues. As a matter of fact, the intervener in his second petition claimed a privilege on the crops of the year on grounds different from those alleged in his first petition. It follows that the merits of the cause as disclosed in the second petition were not heard and decided in the first action.

In Succession of Herber, 119 La. 1064, 44 South. 888, the court said: .

"An insufficient statement of an attorney of the grounds upon which the rights of his client are predicated does not carry with it under the law as a penalty that the actually existing legal rights of the client should be absolutely cut off. At the furthest, it throws the clients out of court, but under the right of renewing the attack under allegations sufficient, if proved, to warrant and justify a judgment."

This doctrine is in line with the common-law rule:

"That, if the plaintiff fails on demurrer in his first action from an omission of an essential allegation in his declaration which is fully supplied in the second suit, the judgment in the first suit is no bar to the second, although the respective actions were instituted to enforce the same right; for the reason that the merits of the cause, as disclosed in the second declaration, were not heard and decided in the first action."

See Gould v. Evansville, 91 U. S. 534, 23 L. Ed. 416.

The civil law doctrine is more restricted than that of the common law as to res judicata, and does not, as a general rule, include everything that might have been pleaded in the first suit. Woodcock v. Baldwin, 110 La. 270, 34 South. 440.

We therefore are of opinion that the judgment below on the intervention of Holly Heyn should be reversed, and the case remanded for further proceedings on the same according to law.

[4] H. Grabenheimer intervened, claiming a balance of $2,245.86 for supplies furnished to the Cora plantation during 1913, with privilege on the crops of that year. Plaintiffs excepted to the petition of intervention on the ground of vagueness and no cause of action. These exceptions were based on the failure of the plaintiff to file with his petition the itemized statement alleged to have been thereto annexed and made part thereof. The judges below properly overruled the exceptions, and permitted the statement to be filed. See Hewitt v. Williams, 47 La. Ann. 742, 17 South. 269. The objection that the itemized statement showed that all of the supplies were not necessary is not worthy of consideration. It was for the court to determine what items on the statement constituted necessary supplies for the plantation. The judge scrutinized the account and deducted items to the extent of over $670. Debts due for necessary supplies to any farm or plantation are privileged. C. C. 3217. The furnishing of necessary supplies creates the privilege. Hewitt v. Williams, 47 La. Ann. 750, 17 South. 269.

Defendant, in its sworn answer, admitted the debt claimed by the intervener, and that the merchandise as per account sued on was used on the Cora plantation during the year

1913. The vice president of the defendant company testified that the intervener furnished the bulk of the groceries used on said plantation during the year 1913, and that he knew from the records kept by the company that the balance sued for by the intervener was justly due. As to the furnishing of supplies and their use on the plantation, the vice president was corroborated by the testimony of one of the clerks in the plantation store. The testimony of the same clerk shows that none of the plantation supplies furnished by the intervener were sold to outsiders.

We therefore conclude that the judgment below on this opposition should be affirmed.

Levy, Loeb & Co., also intervened, claiming a privilege for necessary plantation supplies. The trial judge rejected items aggregating $470, and recognized the remainder of the account as privileged.

The issues and evidence are practically the same as those involved in the intervention of Grabenheimer, and for the same reasons the judgment below should be affirmed.

[5] Mrs. B. Powers intervened, claiming $319.81, with privilege on the sugar and molasses seized, for furnishing meals and supplies to the laborers on defendant's plantation during the grinding season of 1913. Mrs. Powers contracted with the defendant company to furnish such meals at 60 cents per day for each laborer. The company hired the laborers for money wages plus meals. Mrs. Powers looked to the company alone for compensation. That the supplies were cooked, instead of raw, can make no difference in law or equity.

The plaintiffs interposed their usual exceptions of vagueness and of no cause of action, which were properly overruled.

We think the judgment below on this intervention is correct.

Wiley Hampton intervened, claiming $409.-45 as the prevailing price of "approximately"

134 tons of sugar cane sold and delivered to the defendant company, with a privilege as provided by Act No. 27 of 1894 on the sugar, syrup, and molasses manufactured by the said company during the season of 1913.

Z. T. Earle, Jr., intervened and filed a similar claim for sugar cane sold and delivered to the defendant company.

Plaintiffs excepted to both petitions of intervention on the ground of vagueness. These exceptions were overruled. Plaintiffs objected on the same ground to evidence offered by interveners to prove their demands. These objections were also overruled.

Such exceptions lose their force after trial on the merits, unless some particular prejudice be shown. Whitworth v. Railroad Co., 121 La. 898, 46 South. 912.

No prejudice has been shown in the instant case. The two petitions disclosed with reasonable certainty the nature and object of the demands. The unpaid price is stated with certainty, and the number of tons of cane with such correctness as to exclude any material variance. It was not necessary for the petitions to state the law of the case as set forth in Act No. 27 of 1894, granting a privilege in favor of vendors of sugar cane for the unpaid purchase price thereof in all syrup, sugar, and molasses belonging to the purchaser and manufactured by him during the same, to the amount of the product of the cane so sold, to be fixed by a certain rule of proportion.

The evidence sustains the claims of these two interveners. It is true that one item of 20 tons of cane rests on the testimony of Earle, but the judge below accepted his statement as true, and we see no good reason to discredit this witness, especially as his claim is admitted in the sworn answer of the defendant company. The evidence shows that under Act No. 27 of 1894 the interveners are entitled to be paid the full amount of their

claims by preference, as was held by the judge below.

[6] Brown, sheriff, intervened, claiming $177 for cane delivered to defendant for account of one Wiley Hampton, defendant in execution. So far as the delivery and price are concerned, this claim is sustained by the evidence. But plaintiffs and appellants contend that this intervener did not prove the factors necessary to fix the amount of his privilege under Act No. 27 of 1894, and cite Carroll, Henderson & Carroll v. Swift & Co., 129 La. 43, 55 South. 703. But these factors were proven on the trial of the interventions of Earle and Hampton, and, as stated supra, the court below found that the proceeds to be distributed are sufficient to pay all unpaid vendors. This proceeding is a concursus, and the court, having found a basis of distribution common to a certain class of creditors, on evidence offered by one or more of them, we think that the same evidence may be considered as applicable to the claims of other creditors of the same class. No useful purpose would be subserved by remanding the case for the purpose of proving a basis of distribution already determined by the court.

It is therefore ordered that the judgment below rejecting the demand and dismissing the intervention of Holly Heyn be reversed, and that this cause be remanded for trial of said intervention according to law, and it is further ordered that in all other respects the judgment below be affirmed, provided that in the distribution of proceeds of the property a sufficient amount be reserved to pay the alleged privileged claim of Holly Heyn in the event it should be hereafter allowed in whole or in part, and it is finally ordered that plaintiffs and appellants pay the costs of this appeal.

MONROE, C. J., and PROVOSTY, J., take no part.

On Application for Rehearing.

PER CURIAM. It is ordered that our decree herein be amended by condemning the Brooklyn Cooperage Company, the Ozark Cooperage & Lumber Company, the Burkenroad-Goldsmith Company, Limited, and J. Aron & Co., appellants, to pay costs of appeal; and it is further ordered that, with this amendment, the decree herein is made final and executory.