No. 4039

Second Circuit

DUNN MERCANTILE CO., INC., v. HUDSON ET AL.

(July 14, 1931. Opinion and Decree.)
(October 1, 1931. Rehearing Refused.)
(November 3, 1931. Writ of Certiorari and Review Refused by Supreme Court.)

Tobin R. Hodge, of Rayville, attorney for plaintiff, appellee.

Geo. Wesley Smith, of Rayville, attorney for intervener, appellant.

W. D. Cotton, of Rayville, attorney for defendant.

WEBB, J. On March 12, 1930, plaintiff, Dunn Mercantile Company, Inc., entered into a contract with defendant, R. L. Hudson, to furnish him with supplies to be used in cultivating a crop on lands leased by Hudson from C. T. Payne. Hudson gave plaintiff a note for $600, representing the value of supplies agreed to be furnished, bearing 8 per cent per annum interest from maturity, October 1, 1930, and stipulating 10 per cent as attorney's fees in event of non-payment; and in order to secure the payment of the note, Hudson, acting under the provisions of Act No. 66 of 1874, as amended by Act No. 44 of 1882 and Act No. 93 of 1922, pledged the future crop to plaintiff.

Hudson had given C. T. Payne a rent note for $1,700, and on September 23, 1930, Payne instituted suit against Hudson for the balance due on the note, or $1,610, asserting a lessor's privilege and right of pledge on certain movable property owned by Hudson, which included the crop grown on the leased premises, and obtained a writ of provisional seizure, under which there was seized, together with other property subject to the lessor's privilege and right of pledge, twenty-three bales of cotton which had been stored by Hudson in a public warehouse, for which negotiable warehouse receipts had been issued, under the provisions of Act No. 221 of 1908, commonly known as the "Uniform Warehouse Receipt Act."

Pending trial of the suit, an agreement was had between the parties, in which it was agreed that Hudson should sell and transfer the warehouse receipts, representing the cotton stored in the warehouse to S. M. Bulley & Sons, a partnership dealing in cotton; and in pursuance of the agreement, Hudson sold and delivered the warehouse receipts to Bulley & Sons for the price of $1,276.59, which amount, together with other funds sufficient to cover the amount due on the note sued upon, was paid by Hudson to Payne, who released the seizure.

Following the release of the seizure, plaintiff on November 1, 1930, instituted the present suit against Hudson to recover judgment on the note first hereinabove referred to, with recognition of the privilege and pledge on the crop grown by Hudson on the leased premises, and obtained a writ of sequestration under which there was seized some of the crop on the leased premises, estimated as three bales of cotton, and the twenty-three bales of cotton stored in the public warehouse. S. M. Bulley & Sons intervened in the suit asserting ownership of the cotton stored in the warehouse by virtue of its purchase of the warehouse receipts, pleading that the privilege of plaintiff on the cotton was divested by the sale and that plaintiff was estopped to assert any privilege thereon.

On trial judgment was rendered in favor of plaintiff against Hudson for the full amount claimed, together with interest, attorney's fees, and costs, sustaining the writ of sequestration, with recognition of the privilege in favor of the plaintiff on the

property seized for the payment of the judgment; and in favor of intervener recognizing it as the owner of the cotton stored in the warehouse, subject, however, to the privilege recognized thereon in favor of plaintiff, and intervener appeals.

Passing for the present the effect of the sale of the warehouse receipts, representing the cotton in question, with the consent of the lessor, whose privilege on the cotton was superior to the privilege of plaintiff (Act No. 89 of 1886 and Act No. 66 of 1874), for the purpose of paying the lessor's privilege, on the right of plaintiff, we are of the opinion that the right or privilege of plaintiff on the cotton was not affected merely by the transfer of the warehouse receipts.

In National Bank of Commerce v. Sullivan, 117 La. 163, 41 So. 480, the court said that the privilege granted to the furnisher of supplies on the crop under the provisions of article 3217, Civil Code, which is inferior in rank to the privilege resulting from the pledge of the crop under Act No. 66 of 1874, follows the crop after it is severed from the soil into the hands of a purchaser who buys directly from the planter; and although the statement has been criticized in subsequent decisions (Brooklyn Cooperage Co. v. Cora Planting Co. 137 La. 807, 69 So. 195; and Union Seed & Fertilizer Co. v. Supple's Sons, 139 La. 692, 71 So. 949), the rule stated in National Bank of Commerce v. Sullivan was followed in Purity Feed Mills Co. v. Moore, 152 La. 393, 93 So. 196, in which the court held that the privilege of the furnisher of supplies on a crop was superior to the rights of the holder of the warehouse receipts issued under the provisions of Act No. 221 of 1908.

Under the ruling in Purity Feed Mills v. Moore, supra, we are of the opinion that the mere fact that the cotton was deposited in a public warehouse and the receipts transferred to intervener did not prevent the privilege of plaintiff, the furnisher of supplies, from following the cotton into the hands of intervener, and while the evidence shows that plaintiff knew of the seizure made by the lessor, and that plaintiff was advised that the cotton in question would be sold, the evidence did not show that plaintiff knew that Hudson was removing the crop and storing same in the public warehouse and receiving negotiable warehouse receipts therefor; and it cannot be implied that plaintiff consented to the action of Hudson and was estopped from asserting his privilege against intervener, the holder of the warehouse receipts.

Considering, however, the fact that the cotton in question was sold with the consent of the lessor, whose privilege thereon was superior to the privilege of plaintiff, for the purpose of paying the superior privilege, and that the lessor received the proceeds of the sale, plaintiff could not have had any cause of complaint, in the absence of proof of injury.

There is not any suggestion that the price paid by intervener was less than the value of the cotton, and it must be conceded that if Payne had pressed the suit to judgment and sold the crop subject to the respective privileges, the lessor's privilege would have been the first to be paid, and the record indicates that if such course had been taken there would not

have been anything left, after the payment of the lessor's privilege and cost, to be applied on the privilege of plaintiff, furnisher of supplies.

It is evident that plaintiff did not sustain any injury, and did not have any equitable cause of complaint (Hobgood v. Schuler, 44 La. Ann. 537, 10 So. 812), and it is also evident that the lessor had the legal right to demand that the cotton in question be sold and to enforce his privilege thereon without regard to the inferior privilege of plaintiff (Montijo v. Montijo, 37 La. Ann. 703), and we are of the opinion that under the evidence showing that the cotton was sold with the consent of the lessee and lessor, and the proceeds applied to the payment of the lessor's privilege which was superior to the privilege of plaintiff, furnisher of supplies, should be given the same effect as would have been the case if the lessor's privilege and pledge had been judicially recognized, and the sale made to enforce same, and that the cotton in the hands of the purchaser, intervener, cannot be subjected to plaintiff's claim.

It is therefore ordered that the judgment appealed from be amended and that intervener have judgment decreeing him to be the owner of the cotton represented by the warehouse receipts, free and clear of any right or privilege asserted against same by plaintiff, and as thus amended the judgment is affirmed, plaintiff to pay all cost of intervention and cost of appeal.

McGREGOR, J., recused.