## No. 11,978.

JOHN E. HEWETT, B. F. JENKINS AND JOHN B. WILLIAMS, SR., FOR THE USE AND BENEFIT OF CREDITORS AND STOCKHOLDERS OF THE TRADERS BANK OF MANSFIELD VS. T. J. WILLIAMS, JR., AND HIS WIFE, MRS. FLORENCE P. WILLIAMS.

### THE PLEA OF NO CAUSE OF ACTION.

The personal liability arising out of the act of converting another's property (or property on which he has a lien) can not be avoided and frustrated by the fact itself of the conversion.

### RES JUDICATA.

The judgment pleaded as *res judicata* declared that the *dation* could not take effect to the prejudice of the plaintiff's debt before the court for adjudication; that is, the matured debt. The judgment could not deal with the notes not matured and the privilege by which they were secured. A judgment on a plea of prematurity is no support for the plea of *res judicata*.

### NOT A THIRD PERSON WITHOUT NOTICE.

The intervenor was informed of plaintiff's privilege on the two notes sued on in the first suit and in the present suit, and therefore must have known of the existence of this claim before the proceeds of the cotton came into her hands. The intervenor was bound to discharge the debt out of the funds in her possession; failing to thus discharge it, she became personally responsible.

APPEAL from the Ninth Judicial District Court for the Parish of DeSoto. *Land, J., ad hoc.*

*Lee & Liverman* for Plaintiffs, Appellees.

*J. F. Pierson* and *C. W. Elam* for Mrs. Williams, Defendant, Appellant.

Argued and submitted December 21, 1895.
Opinion handed down March 9, 1896.

The opinion of the court was delivered by

BREAUX, J. The plaintiff sues the defendant, Mrs. Williams, for a debt contracted by her husband, to make a crop of cotton on his plantation.

The defendant pleads the exception of no cause of action, *res judicata,* and in her answer she pleads that in a former suit the proceeds of the cotton claimed here were delivered to her, and that neither the cotton or the proceeds are in her possession.

The judgment was pronounced against her, and she appeals.

The prior suit pleaded in defence was brought on notes, two of which had not matured at the time the suit was brought.

The following is our summary of facts:

Two of plaintiff's notes had not matured at the date that suit was brought by him, and one hundred and thirty-six bales of cotton were attached and sequestered. The defendant in that first suit released

the sequestration on a forthcoming bond. Although the property was released under that bond it remained seized under a writ of attachment plaintiff sued out at the same time that he obtained a writ of sequestration. Later the plaintiff obtained an order for the sale of the property *pendente lite;* the property was sold, and realized four thousand two hundred and eighty-six dollars and eight cents.

Mrs. Williams about this time intervened.

With reference to her averred rights the following is an extract from an admission of record binding upon all parties:

"That the evidence taken in suit 5038 showed that the suit was brought and the writ of sequestration obtained in that case by the plaintiff J. E. Hewitt during the forenoon of December 12, 1893, and before 12 o'clock M.; that the writ of sequestration was issued before noon, and sent to the sheriff of Red River parish, and that the *dation en paiement* was made at 3 o'clock in the afternoon of the same day, and that the delivery of the property in Red River parish was made between 5 and 6 o'clock P. M. on same day, December 12, 1893 * *. *

"The evidence further showed that the writ of sequestration was served on T. J. Williams, Jr., on December 12, 1893, before the *dation en paiement* was signed."

In this condition Mrs. Williams intervened, asserting her *dation en paiement* embracing the cotton seized by plaintiff under his privilege for a debt not disputed, though as to a part not matured (the maturity however being near at hand), she received the proceeds of the cotton in question made with the aid of plaintiff's advances.

Taking up the attachment we see that it was dissolved by a judgment of the District Court. It was in matter of this attachment that the intervenor furnished bond, and obtained possession of the property which had been previously sold under an order of court authorizing the sale of property attached. From the judgment no appeal was taken.

In the former suit, the suit in which the attachment was dissolved as just mentioned, judgment was pronounced in favor of Hewitt for the amount of his debt on the matured note with privilege on the cotton seized. The court dismissed his suit on the two unmatured notes, but maintained the sequestration to enable him to assert his privilege in a new suit on the two notes at their maturity'. The District Court in this judgment maintained the *dation en paiement* by T. J. Williams to his wife.

On the appeal taken from this judgment this court maintained the judgment in Hewitt's favor for the debt due and his privilege on the cotton; affirmed the dismissal as to the notes not due; set aside the reservation continuing in force the sequestration to await the second suit; and as to the *dation en paiement*, this court held that Mrs. Williams took the property subject to the privilege in favor of Hewitt, and recognized her right to payment out of the proceeds of the cotton, to the amount of her matured debt. J. E. Hewitt vs. T. J. Williams, Mrs. F. P. Williams, Intervenor, 47 An. 742.

The present suit is for the privileged debt of Hewitt, not matured when the first suit was brought, and presents the issue whether Mrs. Williams, under her *dation en paiement*, holds the proceeds against Hewitt despite his privilege resting on the cotton and the suit in which it was claimed at the time she obtained the proceeds by furnishing a forthcoming bond.

### THE PLEA OF NO CAUSE OF ACTION.

This plea, as we interpret the pleadings and appreciate the argument, rests on the theory that the suit is hypothecary or in revendication of the cotton or its proceeds and that, therefore, it must be directed against the property, there being, it is urged, no personal liability of Mrs. Williams. (The cotton having been disposed of and the proceeds no longer in her possession she avers.)

If the liability alleged by plaintiff is answered by intervenor's use of the proceeds, and her defence is thereby established, it could have been supplied by her at any moment after she received the proceeds, by disposing of them, although such was not the condition of the order under which she was permitted to bond and take possession.

If such be the case, if, after disposing of the proceeds, she was no longer responsible for them, practically the liability never existed. There is, it strikes us, an error here.

The personal liability arising out of the act of converting another's property (or the property on which he had a lien) can not by the fact itself of the conversion or the disappearance of the converted property be defeated. This is not the hypothecary nor the action in revendication to be paid and satisfied by Mrs. Williams out of the funds; or by causing the disappearance of the cotton from which the proceeds were derived. The question is one of personal liabil-

ity for applying property to her own use, although she knew that it was subject to plaintiff's privilege, and that he was attempting to enforce that privilege at the time she received the proceeds representing the property.

### THE PLEA RES JUDICATA.

If it has been decided that a *dation en paiement* by the husband to the wife frees the property from all liens then existing, made at the time and under the circumstances before stated (the service of the suit had already been made on the husband at the moment of the *dation*), such final judgment becomes binding, if not as authority, at least as conclusive between the parties.

Let us see if this was this court's action.

The *res judicata* relied upon is the first judgment maintaining the *dation en paiement* in which the exception of prematurity was maintained on the notes sued upon in this case.

The District Court, in view of the hardship upon the privileged creditor, who would be made to lose because his debt was not due at the moment he instituted suit, retained the sequestration in force until he could bring his new suit at the maturity of his notes. This court, on the appeal from that judgment, maintained the dismissal, but reserved the reservation and dismissed the sequestration.

The notes now sued upon passed out of consideration. As to these notes there could be no adjudication, save that of dismissal, but the judgment in that case decreed that the *dation* in question could not take effect to the prejudice of plaintiff's debt, that is the matured debt. The court distinctly says that a *dation*, though permitted in any condition of the husband's affairs, can not defeat existing liens on his property, and if the notes now sued on had been due and owing the judgment would have included the amount they represent, and this controversy never would have arisen. The defence of *res judicata* is met by the fact that the court could not pass upon the liability arising on the unmatured notes. It is asserted that Hewitt might have issued another writ of sequestration after the judgment of dismissal. It is also asserted that he might have filed a supplemental petition in the pending suit when the notes matured.

After the first suit, brought on notes matured and unmatured, there was no occasion for a sequestration. The object of the sequestration is to seize the property on which the privilege rests. The

cotton was taken from the custody of the court under a forthcoming bond. If Hewitt had any right at all it was against the intervenor who had received the property subject to the privilege.

In the recent case of State *ex rel.* Gondran vs. Judge, 48 An., we held that the intervenor bonding can be made liable on the bond, although a dismissal had been entered; in other words, that the forthcoming bond, even as to third persons, has relation to the debt the writ enforces.

As to the supplemental petition, it would necessarily have changed the issues set forth in the original petition. It necessarily would have given in that case rise to the issue of personal liability of Mrs. Williams, an issue in reality different from that presented in the first suit. Hewitt was under no obligation to assert this demand, by supplemental petition, as it was different, as we have just stated, from the issues it originally presented.

The general rule that the litigant must allege all his grounds for or against the relief he asks can not, we think, in reason and under the authorities, be extended to a right not susceptible of enforcement when he brings his suit, when it is excluded from cognizance by the express terms of the judgment that it is claimed binds him, and when the demand is necessarily entirely different from his cause of action in the suit, the judgment in which is pleaded as *res judicata.*

It is elementary; the judgment on an exception of prematurity will not sustain the plea of *res judicata.*

### NOT A THIRD PERSON WITHOUT NOTICE.

We are not impressed by the proposition that the wife was a third possessor in possession of the hypothecated property.

At the moment that the property was transferred to her she had knowledge or it must be presumed that she had knowledge of the privilege; the community had not been dissolved; it was dissolved some time afterward. She was a member of the community; and a possible beneficiary from the proceeds of crops made upon property of the community, of which she became the owner as we have stated.

She can not, by intervention and bonding, gain an advantage to the extent of defeating one who had aided, by advances, in making the crop.

In the first case the court held that the privilege for the matured

privileged debt did follow the property in the hands of Mrs. Williams.

We recur to these proceedings and recall the views expressed by the members of the court.

The opinion of the Chief Justice on the refusal of the rehearing was that the case required no determination of the general question presented on the application.

Mr. Justice Miller expressed the opinion that the good faith of the purchaser of property, subject to the privilege, was the important test of his right to hold the property.

Mr. Justice Watkins was of the opinion the privilege of Hewitt was cut off by the *dation en paiement*. J. F. Hewitt vs. T. J. Williams, Mrs. F. P. Williams, Intervenor, 47 An. 742, 752, 753, 764.

Can good faith here be successfully invoked?

The husband, in the first suit, succeeded in defeating a portion of the claim on the matured notes. *Pendente lite,* the wife intervenes, and owing to the successful defence of prematurity and her forthcoming bond she was enabled to receive and apply to her uses the proceeds of the property subject to the lien of the husband's creditor. If knowledge or the presumed knowledge is a controlling element in the subject of good faith, the record discloses that element.

The jurisprudence of this State maintains that the insolvency of the husband is no impediment to the transfer to pay her claims. The wife is favored over other creditors, it has always been held: But it would be carrying the principle beyond all limits heretofore declared to hold that a *dation en paiement* entitles her to receive his property to the prejudice of his creditors with privilege on property on which they are seeking to enforce the claim at the very moment of the adjudication.

If intervenor's demand should be granted, at one moment she would have been interested in the crop represented by her husband, as head and master of the community, and the next moment she would have been a third person holding the property through the legal proceedings of the court, under a judgment in which it was decreed that the claim was secured by privilege.

There was here an implied trust in favor of the creditor bearing upon the property. Story on Equity Jurisprudence. There is a decision in point pronounced by the Supreme Court of the United

States—Ellet vs. Butte *et al*. The factor had, in payment of his debt, received and applied the crop he knew to be pledged for the rent of the plantation and on the suit of the lessor. It was held that the factor was liable to the lessor for the proceeds of the crop.

Our own decisions are not less instructive upon the subject, notably Fetter *et al*. vs. Field *et al*., 1 An. 80; E. R. Cory vs. Allen W. Eddins, 13 An. 443; Bres & O'Brien vs. S. C. & J. A. Cowan, R. W. Faulk, Intervenor, 22 An. 438.

If in these cases the lien prevailed against those who had given value for the property and were in possession, *a fortiori* should it prevail against the wife who, with knowledge, has taken the property subject to the lien of the husband's creditor.

The privilege of Hewitt was not defeated by the *dation*. Her liability rests upon the fact that, aware of his right, she received and applied the proceeds of the property.

The judgment appealed from is therefore affirmed.

### DISSENTING OPINION.

#### I.

WATKINS, J. This suit has for its object to make the defendant, Mrs. F. P. Williams, liable for the proceeds of certain cotton which her husband, T. J. Williams, gave to her in payment of his paraphernal indebtedness; and to this demand her answer is that after it had been given to her plaintiff wrested it from her possession by means of writs of sequestration and attachment—one of which was dissolved and the other satisfied—and she is no further amenable to the plaintiff therefor.

This suit is a supplement to Hewitt vs. Williams, 47 An. 742, and it is founded upon the notes which were non-suited therein, because same were not due when suit was filed—the writs of sequestration and attachment therein having embraced the entire series of the defendant's notes, those which were not as well as those which were due.

Plaintiff's theory in the instant case is that because the judgment in the former case recognized his to be a privileged debt bearing upon the crops of T. J. Williams, he is entitled to a judgment compelling her to restore the proceeds of the cotton which came into her possession notwithstanding the non-suit as to two of the notes sued upon.

There is no controversy as to the indebtedness of T. J. Williams or with reference to the privileged character thereof; but the question is whether Mrs. F. P. Williams is now responsible therefor.

In the former suit it was decided that plaintiff had the legal right to seize out of her possession cotton on which his privilege rested for the plantation supplies he had furnished her husband; and that a *dation en paiement* thereof did not protect same from sequestration or attachment notwithstanding same was perfectly valid, made in discharge of a preference debt many years recorded and evidenced by a judgment.

In this suit Mrs. Williams' answer does not invade the domain of the *res adjudicata* of that case, or seek to carry the court over the ground which it has once traveled in arriving at its conclusion; notwithstanding that same was done with some difficulty, as the several opinions of the justices attest.

On the contrary, it is she who specially pleads that conclusion and judgment as forming *res adjudicata* in her favor, and as conclusively barring plaintiff's right to further pursue her for the proceeds of the cotton which was given to her in satisfaction of her paraphernal claim by her husband.

Her insistence is, that property of which she is the owner *bona fide*, was sequestered, attached and taken out of her possession by plaintiff; and that he caused same to be subsequently sold at public outcry, and converted into proceeds, which were substituted for the property. That, *prior* to the sale, defendant, T. J. Williams, gave bond for the property and dissolved the sequestration; and, *subsequent* to the sale, Mrs. F. P. Williams, as intervenor, gave bond for the proceeds and dissolved the attachment. That, several months subsequently, a trial was had and a judgment rendered, which dissolved the attachment and maintained the defendant's plea of prematurity as to the entire debt of defendant, except about one thousand two hundred and fifty dollars.

That, notwithstanding the non-suit, the judgment maintained the sequestration in its entirety, to await the filing of a new suit; but the decree of this court amended that portion of the judgment, and restricted same to the *matured* part of the defendant's indebtedness for which he had obtained judgment.

That she subsequently paid off that judgment for her husband, and discharged him from the sequestration *entirely*, and that, in conse-

quence of said proceedings and decrees, she has become exonerated completely from all liability to the plaintiff on account of her possession of the proceeds of said cotton.

That conceding the rightfulness and legality of the plaintiff's sequestration and attachment of the cotton which had been given to her in part payment of her paraphernal claims in the first instance, the plaintiff *exhausted* his resource against same in that suit, and is without right to any other in the instant case.

That the notes on which this suit is predicated having been embraced in the former litigation, and come to their maturity soon after it was commenced, the duty was imposed upon the plaintiff to have filed an amended petition, and procured additional writs of sequestration and attachment while the property was in the hands of the court, and before it had been converted into proceeds and bonded by her; and, having failed to exercise this plain, legal remedy, the plaintiff is without right to proceed against her, having had his day in court, and suffered a loss, if any, through his own fault and negligence.

That plaintiff's privilege entitled him to proceed against the *res*, and have it seized and sold to pay his judgment, but his judgment having been satisfied he has no right to pursue her judicially, forsooth the *res* passed through her hands, or because they were *consumed* by her after she had given a forthcoming bond, and been released therefrom by a judgment.

The District Judge gave judgment against Mrs. F. P. Williams, commanding her to restore the proceeds, and from that judgment she has appealed; but T. J. Williams acquiesced in the judgment.

It is a significant fact which must be observed that no *moneyed* judgment was asked for and none was rendered against Mrs. Williams, and the proof clearly shows that *the proceeds of the cotton had been consumed* and were not *in esse* when this suit was filed.

Taken chronologically the proceedings and incidents of the former litigation may be related as follows, viz.:

The former suit was filed on the 13th of December, 1893, in the parish of De Soto; and the sequestration was levied upon the crop on defendant's (T. J. Williams) plantation, in the parish of Red River, on the day after, and taken into possession by the sheriff without previous notification to Mrs. F. P. Williams.

On the 16th of December the defendant gave bond and dissolved

the sequestration, but did not procure its release from the attachment which was subsequently filed.

On the same day on which the plaintiff's suit was filed and prior to the levy of the writs, the defendant made a *dation en paiement* to his wife of one hundred and thirty-six bales of cotton, and actually delivered same to her; but same was subsequently sequestered under plaintiff's writs and taken out of her possession and afterward attached.

On the 19th of January, 1894, the plaintiff obtained an order of court for the sale of all the cotton which had been attached, and same was sold on the thirtieth of that month—the sale realizing the sum of four thousand three hundred and fifteen dollars.

On the 29th of January, just two days previous to the sale, Mrs. F. P. Williams filed an intervention claiming the ownership of the cotton which was covered by the *dation;* and on the 16th of February following she gave bond under the attachment for that portion of the proceeds which represented her cotton, and same was released to her.

Mrs. Williams filed her suit against her husband for a separation of property, a dissolution of the community, and a money judgment, on the 22d of January, 1894, *prior* to the filing of her intervention, and recovered a judgment on the 3d of February following; but, under the express terms of the Code, that judgment related back to and took legal effect from the date her petition was filed. R. C. C. 2432.

Consequently, she was judicially separated from her husband, and her judgment recognizing and making her debt executory against him was rendered *prior to her intervention and the judicial sale of her cotton.*

That judgment recognized Mrs. Williams' legal mortgage from the date of its registry on the 10th of February, 1879, many years prior to the existence of plaintiff's claim, and decreed her entitled to recover from her husband twelve thousand four hundred and seventy-five dollars and thirty-seven cents, and nine thousand and thirty-nine dollars and fifty-eight cents, less the value of the cotton which was given to her in partial payment thereof; and it also recognized the act of giving in payment as valid and legal.

To the demand of the plaintiff, Mrs. Williams, as defendant in this suit, tendered a plea of *no cause of action*, and followed it with a

plea of *res adjudicata*, predicated upon *her intervention in the former suit and the judgment thereon rendered;* averring that all the matters and things *as to her,* which are set forth in plaintiff's petition in this suit, were finally adjudicated and decided in the final judgment of this court in the former suit. That same constitutes a bar and an estoppel against him in this cause as to all the demands he has urged for relief against her; as well as to all those which it was competent for him to have raised therein.

## II.

In order to clearly understand the situation of the case at the date of our decree, it will be necessary to look into the judgment which the District Judge rendered, and compare it with our own. The judgment of the District Court was rendered on the 28th of April, 1894.

The transcript in the former case was made part of the transcript in this, and reference to it discloses that there were three distinct judgments rendered therein, on the same date and at one time.

The *first* one was that in favor of the plaintiff and against the defendant, T. J. Williams, the purport of which is as follows, viz.:

That the plaintiff's privilege as furnisher of necessary plantation supplies be recognized and enforced upon the crops raised by the defendant during the year 1893, " *and sustaining* and enforcing his *sequestration thereon, except that portion of the crop included in the dation en paiement* of December 12, 1893, from the defendant to the intervenor."

The sums recognized as being secured by privilege are the following, viz.: the sum of one thousand and fifty dollars; one hundred and fifty dollars; three thousand seven hundred dollars, " and for the sum of nine hundred and sixty-nine dollars out of the account of one thousand nine hundred and forty-five dollars and sixty-six cents."

It further ordered that the privilege claimed on all other items be rejected and disallowed.

" That the plea of prematurity filed by the defendant as to the two notes of one thousand and fifty dollars and three thousand seven hundred dollars be sustained, and the plaintiff's demand for a personal judgment * * * be dismissed as in the case of nonsuit, with leave to the plaintiff to bring his suit on said notes in the

furure; and it is ordered that the writ of sequestration for the amount of said two notes be sustained till said plaintiff can obtain personal judgment on said notes.''

The *second* was that in favor of the intervenor, against the plaintiff, the purport of which is, viz:

That she be decreed "the owner, in her own separate right and claim, of all the property mentioned, or described in the act of giving in payment of the 12th of December, 1893, * * * said property being one hundred and thirty-six bales of cotton," "and other articles therein particularly described;" "and it is further ordered that said property be released and delivered to her.''

The *third* was that in favor of defendant, T. J. Williams, against the plaintiff, the purport of which is as follows, viz.:

That, on the trial of the motion to dissolve the attachment, " the plaintiff's counsel, in open court * * * having conceded that the sureties on the attachment bond * * * are not good and sufficient in the amount of said bond * * * the said writ of attachment was then ordered by the court to be dissolved *on that ground alone* * * * and, consequently, the same is hereby dissolved and set aside.''

From the first judgment the defendant appealed, and from the *second* the plaintiff appealed; but in the *third* the plaintiff acquiesced and did not appeal.

The *status* of the case then was, that plaintiff's privilege on the defendant's crop of 1893 was recognized as securing the sums of one thousand and fifty dollars, three thousand and seven hundred dollars, one hundred and fifty dollars and six hundred and sixty-nine dollars and fifty cents with interest; not however to affect the cotton received by intervenor under the *dation*.

The defendant's plea of prematurity was sustained as to the two notes of one thousand and fifty dollars, and three thousand seven hundred dollars, as of non-suit; and as to these amounts the sequestration was maintained *in statu quo* until plaintiff could obtain in a future suit a personal judgment against the defendant.

The attachment being dissolved and the judgment of dissolution having been acquiesced in, the property and its proceeds were released from seizure under the writ of attachment and the intervenor was discharged from her obligation on the forthcoming bond.

But on appeal the *status* was altered in two particulars; (1) so

as "to avoid that part (of the judgment) which maintained the sequestration on the unmatured notes at the filing of the suit until suit should be filed to perfect the sequestration;" (2) so as " to avoid that part of the judgment, also, which exempts from the enforcement of plaintiff's privilege the crops sold to the intervenor in the *dation en paiement*." Hewitt vs. Williams, 47 An. 752.

The alteration is attested by this further statement in the opinion, viz.:

" The judgment in favor of the intervenor is amended so as to order the delivery of the property described in the *dation en paiement* to her, only after the satisfaction of plaintiff's privilege, as recognized in the judgment in her favor. In other respects it is affirmed." *Ibid.*

The question then arises as to *what* privilege did the property of the intervenor become subject by the amendment of the judgment appealed from ?

The plea of prematurity as to the two notes of one thousand and fifty dollars and thirty-seven hundred dollars having been sustained by the District Judge, his judgment in this respect was affirmed; but that part of the decree maintaining the sequestration until plaintiff could obtain a personal judgment was amended and eliminated completely. Hence, in that case, there was nothing left on which the decree could rest with respect to those two notes, or the privilege securing them. The notes, as well as the privilege, passed out of *that* case along with the dissolved sequestration; and the defendant, 'T. J. Williams, was thereby discharged from the bond he gave to have the property released from the grasp of the writ of sequestration, *save and except with respect to the sum of one hundred and fifty dollars, and nine hundred and sixty-nine dollars and fifty cents, for which plaintiff obtained judgment.*

But the proof shows that the intervenor has paid said sum in full, with interest and cost, since the rendition of our final decree.

Just here it must be observed that the defendant's plea of *res adjudicata* comes into operation; and it is founded on the final judgment of this court upon the intervention, and not upon the judgment of *non*-suit on the two notes aforesaid, as the judge *a quo* supposed.

Her counsel's contention is, that inasmuch as the reserve of the judgment of the District Judge which maintained the sequestration after the non-suit, was reversed and set aside, the *only* condition

that was imposed, or could have been legally imposed upon her *dation*, was that of satisfying "the plaintiff's privilege *as recognized in the judgment.*" That having paid and satisfied that judgment her cotton is fully released from the condition thereon imposed, and that no further demand can be made upon her. That she is protected by that judgment and the satisfaction of same.

Her position seems to be clear and undoubted. Otherwise this court would not have been at the pains to amend the judgment appealed from, reverse the reservation therein contained, and dissolve the sequestration *quoad hoc.*

To hold otherwise is illogical.

Not only so, but defendant's counsel attract our attention to the very significant fact, that while the original suit was filed on the 12th of December, 1893, and the note for three thousand seven hundred dollars went to maturity on the 15th and 18th of the same month, and that for one thousand and fifty dollars went to maturity on the 1st and 4th of January, 1894, plaintiff permitted the cause to go to judgment on the 28th of April, 1894, without tendering an amended petition after the notes became due.

And defendant's counsel argue with great plausibility and force that the demand of the plaintiff, under the circumstances, is inequitable and unjust.

This court held, by a majority of its justices, that the wife's title by *dation* was subordinated to the plaintiff's privilege *to the extent that it gave judgment only.* Surely its decree could extend no further, particularly in view of the effect of its amendment of the judgment appealed from, maintaining the sequestration for the benefit of a future suit. This is the suit therein contemplated, and it comes into court bereft altogether of the District Judge's reservation.

Plaintiff had, in the original suit, the opportunity of defending against the intervenor's claim of ownership on the ground set up in the instant suit. He could have alleged in the alternative that if her title to the cotton was valid that it should not be delivered until his privilege was satisfied *in toto.* But he did not do so.

On the contrary, he provoked a sale of the cotton *pendente lite,* against the defendant's protest, which reduced it to proceeds in the face of Mrs. Williams' intervention claiming it, and she having subsequently bonded the proceeds, the dissolution of the attachment

freed same from the grasp of the law and enabled her to use them at will, subject only to the effect of the sequestration, in so far as it was *finally* maintained by the *judgment of this court.*

Both the cotton and its proceeds have gone beyond the power of the court to recall either of them.

Had the plaintiff amended his petition after the two aforesaid notes became due and supplemented his writ of sequestration prior to the day of the sale of the cotton on the 31st of January, 1894, he could have held and subjected it to his *entire claim* on the theory entertained by this court that the property conveyed by the *dation* passed *cum onere.*

There was *an interval of six weeks* within which he could have availed himself of that remedy, and he is without ground of complaint on the score that this court has recognized the *existence* of his right, but has declined to afford him a remedy.

Plaintiff has had his day in court, and it is his fault that he did not avail himself of the remedy suggested.

Plaintiff asks no money judgment against Mrs. F. P. Williams. This is not an action *ex delicto,* or *ex contractu,* or *ex quasi contractu;* nor is it any hypothecary action. He seeks to compel the defendant to make restitution of property he had caused to be sequestered and attached. Of property he caused to be sold and reduced to proceeds *pendente lite;* and, consequently, lost control of by furnishing *insufficient* sureties on his attachment bond, and failing to amend his petition and sequestration before the sale took place.

### III.

The judge *a quo* cites, in support of his decree, no other authority than Cory vs. Eddins, 13 An. 443. It is a very brief decision, and contains but one sentence which is at all applicable, and that is as follows, viz.:

"Both parties were aware of each other's privileges upon the cotton raised by their common debtor, Tiffee, which was shipped by the defendant; and there was no such *bona fide* sale of the lot to either of them as to defeat the privilege of the other."

The manifest significance of that decision is, that as the sale of the cotton was not in good faith, the privileges were not affected thereby.

*Per contra,* it was said in Heirs of Thompson vs. Bell, 4 La. 451, that "a mortgagee who has a lien upon property which has passed

into the hands of another, other than the mortgagor, is not a credi-
tor of the third possessor; he has a real right which he may exercise
on the thing, and nothing more; a right which is confined to the
object affected, and ceases with its destruction; which producing
only responsibility on the possessor ceases to produce any when the
possession terminates.

\*        \*        \*        \*        \*        \*        \*        \*

"If this action should be maintained, it is not seen on what
grounds any person through whose hands the thing subject to the
lien has passed, could be made responsible for the price received by
him for it; *but this could not be seriously contended for*." (Our
italics.)

That doctrine being applicable to mortgaged property, it is even
more applicable to a lien on movable property, which has no domi-
cile or *situs;* and it is evidently true that Mrs. Williams is not bound
to make restitution to the plaintiff after the cotton which was se-
questered and attached in her hands, has passed through litigation,
and has been long since consumed.

When she gave a forthcoming bond for the proceeds of her cot-
ton and released it from seizure, it passed beyond the plaintiff's
control and that of the court, and plaintiff's lien was transferred
from the cotton and its proceeds to the bond which was substituted
for it.

She became legally entitled to use the proceeds at will and in-
curred no liability to the plaintiff whose only recourse was upon the
forthcoming bond; but when the judgment of the court dissolved
the attachment she was released and discharged therefrom.

Mrs. Williams came under no contractual relations toward the
plaintiff, Hewitt, or his assigns, on account of the sequestration, as
she was neither party nor privy to the forthcoming bond her husband
gave in order to procure the release of the cotton from seizure
thereunder.

Considering that the decree of this court had subjected her per-
sonally, on account of her having received under *dation en paiement,*
a portion of the crop on which the plaintiff's lien rested to the
extent that it affirmed the judgment of the District Court against
her husband and no more, she voluntarily paid off that judgment so
as to relieve herself from any further responsibility; but she did this
notwithstanding she was under no legal duty or obligation to do so.

The defendant, T. J. Williams, having given a forthcoming bond for the release of the cotton from the sequestration, would have been still responsible thereunder for the restitution thereof if he had not been released therefrom by our decree, with the exception of one thousand two hundred and fifty dollars, which Mrs. Williams paid in full with interest and cost.

With this statement of the former case in view let us look into the authorities, and ascertain what are the respective obligations of T. J. Williams, defendant, and Mrs. F. P. Williams, intervenor, under their respective forthcoming bonds, and what were their respective situations after the final judgment of this court was rendered.

(a) *First* with respect to the *sequestration*.

The condition of the forthcoming bond for the release of movable property from sequestration is that the obligor shall be responsible that same shall not be sent away from the jurisdiction of the court; " that he shall not make an improper use of same, and that he will faithfully present them, after definitive judgment, in case he should be decreed to restore the same to the plaintiff." C. P. 230.

In Downey vs. Kenner, 42 An. 1129, it was held that sequestered property which had been bonded by the defendant remaining in his possession afterward is still his property " until the title has been divested in due course of law."

In Phifer vs. Maxwell, 28 An. 862, it was held that, as the intervenor had appeared in the suit to assert his privilege as a supply creditor *after* the sequestered property had been bonded, it was too late; that his recourse was against the property.

The same rule was recognized and applied in McRae vs. Austin, 9 An. 360; Williams vs. Burnham, 28 An. 764; Burbank vs. Taylor, 23 An. 751, and in Lemann vs. Truxillo, 32 An. 65.

In Harrison vs. Jenks, 23 An. 707, it was held that by the defendant bonding property which had been sequestered, did not destroy the lien of a previous intervenor on the property; but that same was secured thereby.

In Carroll vs. Hamilton, 30 An. 523, it was held that the value of the property sequestered, and not the amount of the judgment, regulates the condition of the forthcoming bond.

In Welsh vs. Barrow, 9 R. 535, it was held where a forthcoming bond for the release of sequestered property was taken under a particular law, it must be construed by that law.

In Mulligan vs. Vallee, 31 An. 875, it was held that the insertion in a forthcoming bond, under a writ of sequestration, of the condition that the surety should satisfy such judgment as may be rendered in the pending case, is illegal and not authorized by law.

(b) *Second*, with respect to the *attachment*.

The condition of the forthcoming bond for the release of property attached is [that the defendan " will satisfy such judgment, to the value of the property attached, as may be rendered against him in the suit pending." C. P. 259.

In Dorr vs. Kershaw, 18 La. 57, it was held that " the attachment having been dissolved by the giving of a bond conditioned as the law requires, the cotton was no longer under the control of the court, and the intervenor's claim should have been directed against the person in possession of the property; the condition of the bond entered into by the defendant was not to hold the cotton subject to the order of the court, but to satisfy such judgment as might be rendered against him in the suit pending.

" This personal obligation could not be discharged by the surrender of the property attached, nor could plaintiff, upon obtaining judgment, exercise any recourse upon it.

" The bond is a substitute for the property, but only with regard to the attaching creditor, and for the sole purpose of satisfying any judgment he might obtain  *  *  * As to the bond no one can avail himself of it except the plaintiff in the writ; *if he fails to obtain a judgment the bond is discharged.*"

Ledda vs. Maumus, 17 An. 314, is to the same effect.

See also to the same effect the following cases, viz.: Emanuel vs. Mann, 14 An. 53; Beal vs. Alexander, 7 R. 349; McRae vs. Austin, 9 An. 360; Benton vs. Roberts, 2 An. 243; Wright vs. White, 14 An. 583; White vs. Hawkins, 16 An. 25.

But in Cass vs. Rouark, 25 An. 353, it was held that the bonding of property attached *after* an intervention had been filed did not destroy a prior intervention alleging a lessor's lien on the property, nor divest his right.

In White vs. Hawkins, *supra*, it was held that when a third person, in whose possession property of the defendant is attached, intervenes in the suit and bonds the property, *his liability on the bond will be irrevocably fixed by a final judgment against him in the same manner as the defendant would have been bound if the property had been released on a bond executed by him.*

In Baker vs. Morrison, 4 An. 373, the difference between the conditions of a forthcoming bond under an attachment and one under sequestration was examined and defined, and again in Jacobson vs. Sevill, 6 An. 277, and in Lemann vs. Truxillo, 32 An. 65, and in State ex rel. Jeffrey vs. Judge, 39 An. 1108.

Prior to 1876 the intervenor's right to give a forthcoming bond for the release of an *attachment* was only recognized as equitable merely. Letchford vs. Jacobs, 17 An. 79; White vs. Hawkins, 16 An. 25; Beal vs. Alexander, 7 R. 349; Dawson vs. Williamson, 22 An. 535; Slawson vs. Ker, 29 An. 295.

But this right was *denied all intervenors in sequestrations.* Clapp vs. Phelps, 19 An. 461.

This is the condition the jurisprudence was in when Act 51 of 1876 was passed, the provisions of which are that an intervenor may obtain the release of property *sequestered or attached* "on executing a forthcoming bond in the same manner and amount, within the same delay and with the same effect as the defendant in the suit is now allowed."

In Hawkins vs. Beer, 37 An. 53, it was held that " the sole change in the intervenor's *status* made by the act of 1876 is to enable him to bond *sequestered* property," consequently the decisions quoted have equal application to an intervenor in an attachment or sequestration respectively.

In either case—of an attachment or sequestration—the lien of the creditor is transferred by a judicial sale from the property to its proceeds, and they take the place of the property *in custodia legis.* Spencer Field & Co. vs. Broderick, 12 An. 552; Tiernan vs. Murrah, 1 An. 443.

In State *ex rel.* Gerson vs. Judge, 37 An. 261, it was held that "when the property attached has been sold *in limine,* under C. P. 261, the proceeds take the place of the property, and still continue to be the property attached, and subject to the right of the defendant to bond in every stage of the suit, under C. P. 259."

In my view the foregoing decisions confirm my opinion as above expressed, in the following particulars, viz.:

1. That the defendant is responsible on his forthcoming bond, under the *sequestration,* for the restitution of the cotton or its proceeds *to the extent he is commanded so to do by the final judgment in the case, and no more.*

45

2. That the intervenor bound herself in her forthcoming bond, under the attachment, to pay such judgment as might be rendered against the defendant, in the suit pending on the attachment; but that as the plaintiff failed to obtain judgment against the defendant on the attachment, the bond is discharged.

3. That, in the absence of any reservation in the judgment in respect to the intervenor, she is not liable for the restitution of the property or its proceeds *to a greater extent than the amount for which judgment is given against the defendant*, T. J. Williams.

4. That having received the cotton from her husband in part payment of her paraphernal claims, she can not be compelled to make restitution on account of plaintiff's privilege, because the proceeds of the cotton passed through her hands, and were consumed *prior* to the institution of this suit, and are no longer *in esse*.

5. That this court having found and decided that it was illegal for the judge *a quo* to maintain and preserve *in statu quo* the plaintiff's privilege with regard to the unmatured part of his claim at date of original suit, and reversed his judgment in that respect, is conclusive evidence that the judgment only recognized and enforced the plaintiff's privilege to the extent of the *matured* portion thereof, and same is a bar to a subsequent suit against the intervenor for a greater amount, she having paid and discharged the amount for which there was judgment.

## IV.

Mrs. Williams' position with regard to her pleas of *res adjudicata* and no cause of action is, that in her intervention in the previous suit, she set up her claim to the one hundred and thirty-six bales of cotton under the *dation en paiement*, and denied plaintiff's right to seize same under his sequestration or attachment, and that plaintiff joined issue with her on that question by an answer which affirmed his privilege on the cotton, and his right to enforce the same thereon.

That notwithstanding the judgment of the court maintained her title, and at the same time recognized plaintiff's seizure of her property as subject to his privilege, yet the decree was expressly limited to the *matured* part of the indebtedness of T. J. Williams, which she has paid and fully satisfied, leaving nothing whatever due thereon.

That that decree forms *res adjudicata* as between plaintiff and her,

and bars and estops him from urging his privilege against her in this suit, because the thing demanded is the same, the demand is founded on the same cause of action, the demand is between the same parties, and formed by them against each other in the same quality.

The plea exactly fulfils all the requisites of the Code.   R. C. C. 2285, 2286.

The judgment, as between plaintiff and defendant in the original suit, was one of non-suit merely with respect to the portion of the latter's indebtedness which was not then due; but, with respect to the intervenor's demand, it was a finality, because there was nothing in the judgment therein which was reserved as to her which she has not since fully paid, leaving her subject to no other liability.

In the former suit her cotton was subjected to seizure in the enforcement of plaintiff's supply lien; but in that litigation she was adjudged to be the owner of same and necessarily of its proceeds.

In that suit she appeared as intervenor, but in this she is made defendant; but the demand made in each case, as to her, is formed by and between them and against' each other, " in the same quality" (R. C. C. 2286), she being called upon to produce the *same proceeds* which figured in the former case in order to subject them to the *same privilege*.

The authority of the thing adjudged is a presumption established by law, the essentials of which are (1) that " the thing demanded must be the same;" (2) "the demand must be founded on the same cause of action" (3) the demand " must be between the same parties " (4) they must be formed by the parties " against each other in the same quality." R. C. C. 2286 (2265).

While the foregoing provisions of the Code are quite plain and not difficult of appreciation, it will not be amiss to make a cursory examination of authorities bearing on the subject.

Our jurisprudence has been consistent and uniform to the effect' that " it matters not under what form, whether by petition, exception, rule, or intervention, the question be presented, whenever the same question recurs between the same parties, even under a different form of procedure, the exception of *res adjudicata estops*. Plicque vs. Perret, 19 La. 318; Trescott vs. Lewis, 12 An. 197; City Bank vs. Walden, 1 An. 47; Consolidated Association vs. Mason, 23 An. 619; Sewell vs. Scott, 35 An. 553.

In Ledoux, Administrator, vs. Burton, 30 An. 576, it was held that

" when the issues in the second suit are the same as those in a previous suit between the same parties, that additional parties appear in the second suit will not prevent the judgment in the former suit. having the effect of *res adjudicata* as between the parties who appeared in both suits, in the same capacities."

In that case the court held that a judgment rendered on a petition for an injunction, filed by a third opponent who claimed the property seized, will be a perpetual bar against the plaintiff in execution.

In Shelton vs. Brown, 22 An. 162, it was decided that a party having set forth his demand by intervention, and his rights having been passed upon, is estopped by the plea of *res adjudicata* from prosecuting a different action on the same demand against the same party.

In Succession of Burnford, 1 An. 92, the court said: " The only test as to the effect of a decree is its *finality* as to the matters embraced in it, and its having the requisites of Art. 2265 of the Code," now 2286.

In Trescott vs. Lewis, *supra*, the court held that "the form of procedure is immaterial; if proper parties join issue upon questions either of law or fact before a competent court they must abide by the decision."

In Heroman vs. Louisiana Institute, etc., 34 An. 805, it was held that matters once determined by a court of competent jurisdiction, if the judgment has become final, can never be called into question by the parties or their privies.

The opinion of text-writers and courts of other juridisctions are in perfect accord with the text of our Code and the decisions of this court on the subject.

In a standard work on *Res Adjudicata* we find the following pertinent extracts, viz.:

"An interpleader is concluded by the result as well as the original parties. * * * So where in an attachment a third party interpleaded and claimed the attached property as his own, and the judgment was that defendant was the owner, and afterward the interpleading claimant brought a direct action against the constable in possession of the goods under the attachment writ, the judgment as to the right of property on the issue raised by the interpleader was

held to bar the second action." Wells' *Res Adjudicata*, Sec. 24; Richardson vs. Watson, 23 Mo. 34.

"The relative positions of the parties to the record in the two actions is not regarded as material. They may be respectively plaintiff and defendant, and defendant and plaintiff without altering the result of the first litigation between them, because it is nevertheless an issue between the parties." *Id.*, Sec. 21.

"The rule is that a judgment is conclusive between parties and privies in any subsequent suit." *Id.*, Sec. 12.

That author says that it has been held "that not only is the judgment of a court conclusive on all questions actually and formally litigated, but likewise as to all questions within the issue, whether formally litigated or not, that is to say, all matters which are impliedly and necessarily within the issue joined, and the determination of which is necessarily included in the judgment." *Id.*, Sec. 217; Ballinger vs. Cragin, 31 Barb. 534.

That author says "the principle is the same, whether the matter which might have been adjudicated in the first suit would have been a ground of the action, or a defence to the plaintiff's case." *Id.*, Sec. 253.

The Illinois court, quoting from Bigelow on Estoppel, say:

"It follows also, from the authorities considered, that a valid judgment for the plaintiff sweeps away every defence that should have been raised against the action, and this, too, for the purposes of every subsequent suit, whether founded on the same or a different cause." Keller vs. Douline, 70 Ill. 385.

And Mr. Wells says:

"So that if the precise issue of the former suit, necessary to the determination of the controversy therein, be again brought between the parties in the latter action, even though collaterally, yet relevantly and materially, the former decree must conclude the matter from further dispute." *Res Adjudicata*, Sec. 304.

Such is also the jurisprudence of the Supreme Court of the United States, and the governing principle is nowhere better stated than in Aurora City vs. West, 7 Wallace, 82, in which the court employ this explicit language, viz.:

"Courts of justice, in stating the rule, do not always employ the same language; but where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in

the first suit, and might have been presented in that trial, the matter must be considered as having passed *in rem adjudicatam*, and the former judgment, in such a case, is conclusive between the parties."

Mr. Wells further states the rule to be that contestants are not allowed to split up a cause of action, even where they have an election of different remedies, into different actions, or to supplement an incomplete remedy they may have selected at the first, by availing themselves, subsequently, of another. *Res Adjudicata*, Sec. 222; Sims vs. Zane, 24 Penn. St. 243.

On this *resumé* of authority Mrs. Williams' plea of *res adjudicata* should have been sustained by the judge *a quo*.

### V.

The disorder of the husband's affairs authorizes the wife to petition the court for a separation of property, and a money judgment against him for her paraphernal claims (R. C. C. 2425) ; and the law allows the husband to transfer to his wife property in the replacement of her dotal and other effects he has alienated.   R. C. C. 2446.

The paraphernal funds of the wife passing into the hands of her husband, and having been used by him *during the marriage*, same constitutes a charge against the community.

In Downs vs. Morrison, 13 An. 379, it was decided that money belonging to the wife, received by the husband during the marriage, constitutes a charge against the community.

It was so decided in the following cases, viz.:  Harrell vs. Harrell, 12 An. 550; Mercier vs. Canonge, 12 R. 385; Succession of Thomas, 12 R. 215; Jeaudron vs. Boudraux, 1 R. 383; Succession of Foreman, 38 An. 700.

The Code declares only that " the debts of both husband and wife, *anterior to the marriage*, must be acquitted out of their personal and individual effects" (R. C. C. 2403), not those contracted *during the marriage*.

There is, therefore, no doubt of the husband's right to transfer to his wife community property in replacement of her paraphernal money which he received and used during the marriage—she not being personally responsible for the payment of community debts. R. C. C. 2410, 2411; Stuffler vs. Puckett, 30 An. 813.

Consequently Mrs. Williams was legally entitled to receive from

her husband community property in partial payment of her paraphernal claims, and, on that account, she incurred no liability to the plaintiff as a community creditor.

And it was decided in Levy vs. Morgan, 33 An. 532, that "there is no difference to be made whether the transfer takes place after the judgment of separation or without such judgment." Thompson vs. Freeman, 34 An. 992; Leman, Abraham & Co. vs. Levy, 30 An. 745; Judice vs. Neda, 8 An. 485; Succession of Webre, 35 An. 206.

But if, under exactly similar circumstances, the husband gives to a preference creditor, other than his wife, property in settlement of his claim, to the neglect of another, his remaining property becomes liable to attachment.

This is the situation in which T. J. Williams finds himself; and his privileged creditors have seized the property which he transferred to his wife, in partial payment of her paraphernal claims by *dation en paiement.*

Not only so, but, notwithstanding she intervened in that suit, and litigated the creditor's right to a final judgment in this court, the same creditor is still pursuing her, demanding a judgment against her, because the property, no longer *in esse,* passed through her hands.

For this proceeding there is neither precedent nor authority; but once establish the proposition as tenable, and every bank, broker or factor, through whose hands any agricultural products may have passed in the course of trade, will at once become amenable to suit by the supply creditor.

This surely can not be the law.