(71 South. 949)

No. 21952.

UNION SEED & FERTILIZER CO. v. J. SUPPLE'S SONS PLANTING CO. et al.

(May 22, 1916. Concurring Opinion June 17, 1916.)

*(Syllabus by the Court.)*

AGRICULTURE ☞15½—LIENS—PERSONAL LIABILITY.

One who purchases agricultural products from a farmer does not thereby make himself personally liable for the payment of the debts of the farmer that were secured by unrecorded liens on the crop.

[Ed. Note.—For other cases, see Agriculture, Dec. Dig. ☞15½.]

Appeal from Twenty-First Judicial District Court, Parish of Iberville.

Action by the Union Seed & Fertilizer Company against the J. Supple's Sons Planting Company and another. From a judgment for defendants, plaintiff appeals. Heard on certified question from the Court of Appeal. Case remanded, with instructions to affirm judgment of trial court.

Miller, Miller & Fletchinger, of New Orleans, and J. H. Pugh, of Plaquemine, for appellant. Borron & Wilbert, of Plaquemine, for appellees.

O'NIELL, J. The question propounded by the Court of Appeal is whether the plaintiff's petition sets forth a cause of action for a personal judgment against the defendants, J. Supple's Sons Planting Company and J. Supple's Sons Mercantile Company in solido, or against either of them, by the following allegations, viz.:

(1) That the plaintiff, Union Seed & Fertilizer Company, on the 20th of March, 1914, acquired by purchase and assignment all of the property, real and personal, of the New Orleans Acid & Fertilizer Company, including a claim for $1,500, bearing interest at 6 per cent. per annum from the 13th of April, 1911, due for fertilizers sold and delivered

on that day to M. Hanlon's Sons, used by them in the cultivation of a crop of sugar cane raised during that year on their Nottaway plantation, and secured by lien or privilege on the aforesaid crop and the proceeds thereof.

(2) That the defendant mercantile company made advances to M. Hanlon's Sons to the amount of $35,000 to make the crop of 1911, on condition that the cane should be delivered to the defendant planting company, to be by it manufactured into sugar and sold, and that the mercantile company should collect the proceeds of the sale and apply the same to the extinguishment of the debt due for the advances the mercantile company had made.

(3) That the mercantile company collected from the planting company the proceeds of the crop to the amount of $46,000, and, having reimbursed itself for the advances ($35,000), retained the balance ($11,000) in satisfaction of unsecured debts due by M. Hanlon's Sons, in accordance with its contract with M. Hanlon's Sons, and to the prejudice of the plaintiff's lien and privilege.

The Court of Appeal certifies that this suit was filed on the 5th of May, 1915, and that the plaintiff does not pray for recognition of a lien or privilege on the proceeds of the crop of 1911, nor allege that the proceeds are held by either of the defendants; the allegation being that the credit due to M. Hanlon's Sons for the surplus of proceeds over and above the amount of advances made by the mercantile company was extinguished by ordinary debts due by M. Hanlon's Sons to the mercantile company. The Court of Appeal submits the questions for decision: First, whether the manufacturer, who converted the sugar cane into sugar and molasses, and, according to an agreement with the cane grower, sold the sugar and molasses, and paid the entire proceeds to the commission merchant, who had advanced an amount less than the proceeds of the crop, is personally liable for the debt due by the cane grower to the plaintiff, a third party, whose claim was secured by a lien and privilege on the crop; and, second, whether the commission merchant, by applying the surplus of the proceeds of the crop to the payment of an unsecured debt due by the cane grower, became personally liable for the debt due by the cane grower to the plaintiff for the price of the fertilizers used in the cultivation of the cane.

Our answer is that the plaintiff has not a cause of action against either of the defendants. The debt due by M. Hanlon's Sons to the plaintiff for the fertilizers furnished and used for the cultivation of the crop of 1911 was secured by a lien or privilege on the crop and the proceeds thereof. R. C. C. § 3217. The proceeds of the crop consisted of the credit due to M. Hanlon's Sons from the sale of the crop, and that credit vanished when, with the consent of M. Hanlon's Sons, it was applied to the payment of their debts.

The case of Welsh v. Barrow, 3 La. Ann. 133, where an overseer enforced his lien or privilege on the proceeds of a crop of sugar cane after the plantation had been sold with the growing crop, seems to have been decided on the theory that the debt representing the proceeds of the sale of the crop was not extinguished by confusion; that "the proceeds were," as the court said, "in the defendant's pocket." In Garcia v. Garcia et al., 7 La. Ann. 526, the overseer enforced his lien or privilege on the crop before it was removed from the plantation by the commission merchant, in whose favor a contract of antichresis had been made by the owner. In the cases of Hewitt v. Williams, 47 La. Ann. 742, 17 South. 269, and Hewett v. Same, 48 La. Ann. 686, 19 South. 604, where the lien of the furnisher of supplies was recognized on a quantity of cotton and the proceeds of the

sale of it, after the debtor had transferred the plantation and cotton to his wife by a dation en paiement, the cotton affected by the lien was seized under writs of sequestration and attachment. We are not called upon now to pass upon the correctness of that decision in so far as it held the transferee of the property liable for the debt of her husband. The important distinction between that case and the one before us is that in the case cited the plaintiff had the crop seized, and had his lien recognized and enforced upon it; whereas in the case before us the crop and its proceeds were not in existence when the suit was filed. There is the same distinction between the present case and that of Weill & Co. v. Kent et al., 52 La. Ann. 2139, 28 South. 295, where it was held that the growing crop passed to the purchaser of the plantation, "without personal liability on his part to the furnisher of supplies; but he takes it cum onere." It is true that, when that case was before the court a second time (107 La. 322, 31 South. 761), it was said that the court had already held that the purchaser of the plantation, without knowledge of the existence of the unrecorded lien or privilege in favor of the furnisher of supplies, and without any privity of contract, could be held personally liable for the debt due to the furnisher of supplies, to the extent of the value of the crop he received; but it does not appear that the court went that far in the previous decision, and the doctrine cannot be maintained. Personal actions must be based upon one of the four causes that give rise to personal obligations. They are contracts and quasi contracts, offenses and quasi offenses. C. P. 28. Personal actions arise from contracts where one has bound himself for his own advantage, as by selling, purchasing, hiring, or letting, or by any like contract. C. P. 28. Personal actions arise from quasi contracts when they are based upon the obligations imposed upon him who has managed the affairs of another without being authorized. C. P. 30. Personal actions arise from offenses when one person has become liable to another for the injury he has inflicted on him by some crime or offense, such as theft or slander. C. P. 31. Personal actions arise from quasi offenses when the ground of action is the injury done to another by one of those faults which are not considered real crimes or offenses. C. P. 32. In the case before us there was no contract, quasi contract, offense, nor quasi offense on the part of either of the defendants; hence there was nothing on which a personal action could arise in favor of the plaintiff. Any expression to the contrary in Weill v. Kent, 107 La. 322, 31 South. 761, is in conflict with the provisions of the Code of Practice, and must be, and is now, overruled.

The decision in National Bank of Commerce v. Sullivan, 117 La. 163, 41 South. 480, was not that one who purchased a crop thereby rendered himself personally liable for unrecorded claims for supplies advanced to make the crop. In fact, the decision cannot even be considered authority for the general proposition that the privilege of the furnisher of supplies follows the crop in the hands of third persons without registry of the claim; because, to that extent, the then Chief Justice and one of the Associate Justices dissented from the opinion, and another of the justices was absent, and did not take part in the decision. And in a later case attention was called to the fact that the purchaser had bought the crop while it was growing, and, by aiding the party who had raised it to "run the crop off," had disclosed an actual knowledge of the lien and privilege affecting it. See Loeb v. Collier, 131 La. 377, 59 South. 816. In the latter case the only question presented for decision was whether a purchaser of a bale of cotton from one who had not raised it took it subject to a secret lien for necessary supplies furnished to the party who had

raised it; and it was decided that the lien did not follow the cotton into the hands of the second purchaser as an article of commerce. In the case of the Brooklyn Cooperage Co. v. Cora Planting & Mfg. Co., 137 La. 811, 69 South. 195, it was held merely that the privilege of the furnisher of supplies to make a crop of sugar was not lost by the sale of the sugar, inasmuch as it remained on the plantation in the possession of the seller.

We have given an analysis of the foregoing decisions because they are referred to by the Court of Appeal as casting much doubt upon the question presented for decision. One who purchases agricultural products from a farmer does not thereby render himself personally liable for the debts of the farmer secured by unrecorded liens on the crop.

Under authority of article 101 of the Constitution, this case is remanded to the Court of Appeal, with the instruction to affirm the judgment of the district court, maintaining the exception of no cause of action, and rejecting the plaintiff's demand at its cost.

See concurring opinion of PROVOSTY, J., 71 South. 951.