**No. ——**

**First Circuit**

------

**AMERICAN COTTON OIL CO. v. BOQUET AND JACUZZO**

------

(Feb. 12, 1927.   Opinion and Decree.)

------

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Agriculture—Par. 18, 19.**

The privilege granted by Article 3217 of the Civil Code given to the lender for

money advanced on the "crops of the year and the proceeds thereof" does not attach to money received by another lender from the purchaser of the crop in payment of the debt.

Appeal from the Parish of Terrebonne. Hon. H. M. Wallis, Jr., Judge ad hoc.

Action by American Cotton Oil Company against Adam Boquet and Jos. Jacuzzo.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

Butler & Wurzlow, of Houma, and C. F. Fletchinger, of New Orleans, attorneys for plaintiff, appellant.

Harris Gagne, of Houma, attorney for defendants, appellees.

ELLIOTT, J.    Dissents.

LECHE, J.    Adam Boquet in order to cultivate his Front Lawn plantation, situated in the Parish of Terrebonne, and to plant and grow thereon during the year 1922, crops of sugar cane and corn, obtained advances in money from Jos. Jacuzzo. He first borrowed in January, 1922, by written contract, eleven thousand, five hundred dollars, then about September, being in need of more funds to complete the cultivation and harvesting of his crops, he borrowed in the same manner from Jacuzzo, the further sum of five thousand dollars.

In the mean time, he bought from plaintiff, in the month of April, 1922, for the purpose also of growing the same crops, fertilizer, for the price of some $1719.00, of which amount he still owes plaintiff a little over twelve hundred dollars.

These three contracts, two in favor of Jacuzzo and one in favor of plaintiff, all recognized the lien and privilege and right of pledge accorded by law and were seasonably recorded.

When the crop was harvested, it was sold and delivered by Boquet to the Ashland Planting and Manufacturing Company. The Ashland Company paid for the same by checks in favor of Boquet on the Terebonne Trust & Savings Bank of Houma. The bank upon the instruction of Boquet and Jacuzzo, credited the money to the account of Jacuzzo.

In the present suit, plaintiff prays for judgment for the balance due to it for fertilizer, against both Boquet and Jacuzzo. Boquet does not contest the claim, and the issue to be decided, is whether Jacuzzo is responsible to plaintiff and should be held personally liable for the claim.

The total amount agreed to be advanced by Jacuzzo was $16,500.00, but in point of fact, Jacuzzo advanced $20,000.00. The proceeds of the crop amounted to $19,965.00 and Jacuzzo testifies that Boquet still owes him a balance of $35.00.

Plaintiff in its petition, in substance alleges, as we understand the pleadings, that Jacuzzo is personally responsible for the amount of its claim, on two grounds: First, that he and Boquet fraudulently conspired to deprive it of the benefit of its privilege and pledge on the crop, and second, that the price paid for the crop was affected with its privilege when turned over to him by Boquet, and that by taking these funds, Jacuzzo became personally responsible for the payment of its claim.

The first charge, that Jacuzzo had committed a quasi offense, and is responsible as a wrong doer, is not supported by any proof and is not presently urged and in-

sisted upon in this court, so that the sole question presented to us for decision, is whether Jacuzzo by accepting in payment of his advances to Boquet, the money which the Ashland Planting Company paid to Boquet as the purchase price of the crop, made himself personally responsible and liable to plaintiff for the amount due by Boquet on its fertilizer bill.

One of the difficulties that always presents itself in such cases as the present one, arises from the construction or meaning of the word "proceeds" as used in Article 3217 C. C. The Code of 1825 in Article 3184, speaks of the privilege on the crop and of the privilege on the "product" of the crop in language literally translated from the French word "produit" of the original text. But by the Act 195, p. 351, of 1867, that word is for the first time translated into English by the use of the word "proceeds". Article 3217 of the Code of 1870 is only a reproduction of the language used in the Act of 1867. If the lawmaker intended by the word "produit" to designate the things into which the crop is manufactured, such as sugar and molasses, produced from sugar cane, or meal and grits produced from corn, there would be something corporeal and tangible on which the privilege would continue to rest, but when the word "produit" is construed to mean the price in money for which the crop was sold, it is difficult to conceive how a privilege can be held to attach to money, which has no identity and which is only a representative of value. Of course one may have a privilege on a bag of money, as for its preservation, but then the privilege is on the specie itself and not on the money as such.

In the case of Weil & Co. vs. Kent, 52 La. Ann. 2148, 28 So. 295, the Supreme Court seems to hold that the price of the crop in money, continues to be affected with the factor's privilege and the case of Hewett vs. Williams, 48 La. Ann. 690, 19 So. 604, is cited as authority for this doctrine. So that we must accept this construction and meaning of the word "proceeds". But even if we adopt that meaning of the word "proceeds", there is certainly no authority to sustain the proposition that a crop privilege on the money proceeds derived from the sale of the crop, follows these proceeds after they have gone out of the hands of the seller of the crop. Privileges on movables do not follow the movable after it has gone out of the hands of the original debtor. We see nothing in the case of American Cotton Oil vs. Spiller Sugar Co., 161 La. 446, 108 So. 878, conflicting with this well recognized legal principle. The court held in Loeb vs. Collier et al., 131 La. 377, 59 So. 816, that agricultural products, when sold by the purchaser of the crop, enter the channels of trade and become merchandise free from any crop lien.

It must be observed that in the present case, the sugar cane was sold by Boquet to the Ashland Planting and Manufacturing Company. That the Ashland Company paid Boquet and that Boquet then turned over these money proceeds to Jacuzzo in satisfatcion of the advances made to him by Jacuzzo. Jacuzzo did not handle the crop, he neither purchased it nor sold it, but received the proceeds from Boquet, his debtor. We can't conceive how it can reasonably be held that the money which Boquet paid to Jacuzzo, admitting it was the same money which Boquet received from the Ashland Company, came into the hands of Jacuzzo affected with a privilege in favor of plaintiff, and this is the only theory upon which plaintiff could hold Jacuzzo personally liable.

There were no contractual relations between plaintiff and Jacuzzo, nor was Jacuzzo guilty of any quasi offense against plaintiff and we are therefore of the opinino that Jacuzzo cannot be held personally liable to plaintiff.

It was held otherwise in Weil vs. Kent, 107 La. 322, 31 So. 761, but that decision has been expressly overruled. See Roger vs. Milliken & Farwell, 150 La. 657; Duke vs. Crawford, Jenkins & Booth, 150 La. 1023, 91 So. 143; Union Seed & Fertilizer Co. vs. J. Supple's Sons Planting Co., 139 La. 692, 71 So. 949.

For these reasons, the judgment appealed from is affirmed.